[Civil No. 1465.   Filed December 22, 1915.]

[153 Pac. 767.]

In the Matter of the Estate of MARY A. R. TYRRELL,. Deceased. LOUISA H. KNAUFF, MATILDA F. PEARSON and W. H. PEARSON, Appellants, v. A. H.. DAVIDSON, Administrator, Appellee.

1. WILLS—RIGHT OF TESTAMENTARY DISPOSITION—STATUTORY ORIGIN.— The right to make a testamentary disposition of property is purely of statutory creation, and is available only on strict compliance. with the requirements of the statute.

2. WILLS—CONSTRUCTION—INTENT OF TESTATOR.—A valid will will be construed to give effect to the intention of the testator if it is lawful and ascertainable.

[As to intent of testator as test of validity of will, see note in 89 **Am. St. Rep.** 488.]

3. WILLS—"HOLOGRAPHIC WILL"—NECESSITY FOR SIGNATURE.—Under the statute of wills, requiring that the instrument be authenticated by the signature of the testator, where decedent wrote at the head of a sheet of note paper, "This is my last and only will. If I should make another later I will destroy this one." thereafter noting the disposition she desired made of her property, but not signing the sheet, which she placed in an envelope, indorsing it: "This is my last and only Will. To be opened and acted upon by the Officers of the Humane Society in Phoenix. [Signed]‧ Miss M. A. R. Tyrrell"—there was no valid "holographic will," the essentials of which are that the paper express a testamentary disposition of property and be wholly written and signed by the testator, which may be proved as other private writings, since the signed writing on the envelope was not a will, while that on the note paper was not signed, there being no sufficient connection between the instruments to incorporate them.

4. WILLS — HOLOGRAPHIC WILL — NECESSITY FOR SIGNATURE.—Where a testator writes and signs her name upon an envelope, stating that her last will will be found among her effects in a certain trunk, and is so precise in the description of the paper that there can be no doubt of its identification, the instrument, being found in the designated place unsigned, cannot be admitted to probate as a holographic will on account of the omission to sign it.

5. WILLS—HOLOGRAPHIC WILL—NECESSITY FOR PUBLICATION AND ATTESTATION.—Under the statute there is no necessity for publication of holographic wills by signing and acknowledgment or for the attestation of witnesses.

6. WILLS—VALIDITY—INSCRIPTION ON DETACHED SHEETS.—A valid will may be made on detached sheets of paper, coherence and internal sense being sufficient to connect them.

APPEAL from a judgment of the Superior Court of the County of Maricopa. J. C. Phillips, Judge. Reversed and remanded.

Mr. R. M. Fleming, for Appellants.

Mr. J. H. Langston, for Appellee.

FRANKLIN, J.—This is a contest of the validity of a will made after its admission to probate. The will was admitted

to probate without a contest, and this appeal is from the judgment or order of the superior court refusing to revoke the probate thereof.

It is first contended that there was no showing of testamentary capacity. This matter was gone into at the preliminary hearing, and the evidence in the record is, we think, sufficient, *prima facie*, to establish testamentary capacity in the absence of any evidence to the contrary. The evidence in the record is confined to testamentary capacity and the proof of handwriting. The next contention is that the paper propounded for probate as the holographic will of M. A. R. Tyrrell was not executed with the formalities required by the statute.

M. A. R. Tyrrell, a woman, was a resident and property owner in Maricopa county, Arizona, and died in Phoenix. After the death of Miss Tyrrell, a search was made among her effects, and in a trunk belonging to her there was found a writing inclosed in an unsealed envelope. This writing is on a piece of note paper such as a woman might use in her social correspondence. This sheet of note paper is folded so as to make four pages. The front or first page of the note paper at its top bears an embossed coat of arms upon which is a legend printed in the French language. The writing in question covers the first and second pages of the note paper and also the third page thereof, except for a space of about three inches at the end, which space is blank. The fourth or last page of the note paper is blank. The unsealed envelope in which the writing on the note paper was found is of the same quality and color as that of the note paper. The writing beginning on the first sheet of the note paper is as follows:

"This is my last and only *Will*. If I should make another later I will destroy this one [Separating these expressions from those to follow there is a line in ink drawn horizontally across the sheet and passing through the legend printed on the coat of arms. The writing proceeds:]

"When I die I wish that a lot in a cemetery in the town where I die be bought for me to have decent burial, after that whatever I die possessed of, of any kind, sort or description to be taken charge of by the officers of the Society for the Prevention of Cruelty to Animals in Phoenix or in other words by the Humane Society and be used for the benefit of

that Society and for no other purpose. The home I leave, 1510 East Washington St., the deed for which is recorded, unless I sell it in the meantime, to be used for a permanent home for sick, homeless and friendless dumb animals especially cats, dogs and horses   If it is not a suitable one and can be disposed of to advantage, that is to be done and a suitable one provided   All pet dumb animals that I leave are to be taken the best care of till they die a natural death and I request the officers of the Humane Society to see that my wishes are faithfully carried out   I leave nothing to any person or persons and I owe no debts.   All papers proving my rights will be found in one of my trunks and perhaps a little loose money.   Any of my personal effects that cannot be sold to add to the fund to be put with my private papers and burned.''

On the envelope this writing appears:

''This is my last and only *Will*.   To be opened and acted upon by the Officers of the Humane Society in Phoenix.

''[Signed]   Miss M. A. R. TYRRELL.''

The evidence discloses that the writing on the note paper and that on the envelope is wholly written by the deceased. These two separate pieces of paper were propounded together for probate as the last will and testament of the said M. A. R. Tyrrell.   Having been admitted to probate certain interested persons filed a petition in writing containing allegations against the validity of the will, and praying that the probate thereof be revoked.   On the hearing the superior court refused to revoke the probate of the will; hence this appeal.

Having disposed of the first contention, the second point disputed directs our attention to the establishment of the finality or completeness of the act of making a will and not to the rules governing the construction of a will when the act of making it is established as final and complete.   In other words, to the construction of the statute governing the execution of a will, and not to the construction of a will executed in conformity with the statute.   In short, what is the intention of the legislature as expressed in the language of the statute with reference to the formalities required in the execution and authentication of a valid will, and does the paper propounded for probate show a compliance with the statute?

In the law governing wills it is elementary that the right to make a testamentary disposition of one's property is purely of statutory creation, and is available only on compliance with the requirements of the statute. *Estate of Seaman,* 146 Cal. 455, 106 Am. St. Rep. 53, 2 Ann. Cas. 726, 80 Pac. 700. When a will is executed with the formalities required by the statute and it has been admitted to probate, then it will be construed so as to give effect to the intention of the testator, if that intention be lawful, and if such intention can be ascertained. This is the paramount rule to which all others must yield.

"When a will is proved every exertion of the court is directed to giving effect to the wishes of the testator therein expressed, but in the proving of the instrument the sole consideration before the court is whether or not the legislative mandates have been complied with." *In re Walker's Estate,* 110 Cal. 387, 52 Am. St. Rep. 104, 30 L. R. A. 460, 42 Pac. 815.

A person may undertake to make a will and do certain acts with the intention of thereby executing his will, leaving undone nothing which he undertook to do to carry out that intention; but if the acts done do not include everything necessary under our statutes for the execution of a will it cannot be admitted to probate as such. If the statute requires the testator to sign the instrument and he omits to sign it, though he intended to do so, such omission may not be cured by his intention. The omission is fatal to the validity of the will. The omission of any of the requirements of the statute will not be overlooked on the ground that it is beyond question that the paper was executed by the decedent as his will while he possessed abundant testamentary capacity, and was free from fraud, constraint or undue influence, and there is no question of his testamentary purpose, and no obstacle to carrying it into effect had his will been executed in the manner prescribed by the statute. *Estate of Rand,* 61 Cal. 468, 44 Am. Rep. 555; *Estate of Walker,* 110 Cal. 387, 52 Am. St. Rep. 104, 30 L. R. A. 460, 42 Pac. 815; *Succession of Armant,* 43 La. Ann. 310, 26 Am. St. Rep. 183, 9 South. 50; *Baker* v. *Brown,* 83 Miss. 793, 1 Ann. Cas. 371, 36 South. 539; *Warwick* v. *Warwick,* 86 Va. 596, 6 L. R. A. 775, 10 S. E. 843;

*Sears* v. *Sears*, 77 Ohio St. 104, 11 Ann. Cas. 1008, 17 L. R. A. (N. S.) 353, 82 N. E. 1067.

In *Smee* v. *Bryer*, 6 Moore P. C. 404, cited in the last preceding case, it is said:

"It may happen, even frequently, that genuine wills, namely, wills truly expressing the intentions of the testators, are made without observations of the required forms; and whenever that happens, the genuine intention is frustrated by the act of the legislature, of which the general object is to give effect to the intention. The courts must consider that the legislature, having regard to all probable circumstances, has thought it best, and has therefore determined, to run the risk of frustrating the intentions sometimes, in preference to the risk of giving effect to or facilitating the formation of spurious wills, by the absence of forms. It is supposed, and that authoritatively, that the evil of defeating the intention in some cases, by requiring forms, is less than the evil probably to arise by giving validity to wills without any form in all cases."

Mr. Justice HENSHAW, speaking for the court, in *Re Estate of Walker, supra,* puts it in another way, and quite as effectively. He says:

"The legislative mandates are supreme, and there is no right to make testamentary disposition except upon compliance with those mandates. It may be freely conceded that the question under consideration is of a nature purely technical, but it is to be remembered that the whole subject matter of the execution and authentication of wills is technical and nothing else; and it must not be forgotten that the technicalities are those which the law-making power has the right to impose and has imposed upon the maker of a will."

The legislature has not attempted to prescribe the form in which the testamentary disposition of property shall be expressed, but it has prescribed the formalities which must attend the execution and authentication of such testamentary purpose. Such formalities are designed to prevent fraud and to afford means to determine the authenticity of wills, and a testator who would deprive an heir of his inheritance must do so only upon the conditions prescribed by the law. The acts necessary to be performed in the execution of a will differ in particulars in many of the states by virtue of the stat-

utes. The statutes of some states are peculiar to themselves. In some jurisdictions the will must be "dated" and "signed at the end thereof." And in Virginia the signing of a will, to be a sufficient signing under the statute, must be such as upon the face, and from the form of the instrument, appears to have been intended to give it authenticity. It must appear that the name was regarded as a signature, and that the instrument was complete without further signature, and the paper itself must show this; extrinsic evidence not being admissible either to prove or disprove it. *Waller* v. *Waller*, 1 Gratt. (Va.) 454, 42 Am. Dec. 564; *Ramsey* v. *Ramsey's Exr.*, 13 Gratt. (Va.) 664, 70 Am. Dec. 438; *Roy* v. *Roy's Exr.*, 16 Gratt. (Va.) 418, 84 Am. Dec. 696; *Succession of Armant*, 43 La. Ann. 310, 26 Am. St. Rep. 183, 9 South. 50.

The difference in such statutory particulars must, of course, produce an apparent conflict of authority to one who ignores the peculiarities of the particular statute under consideration, and this confusion is begotten by ignoring the distinction between the intent of the testator in expressing his testamentary purposes, and his intent with reference to the act by which he authenticates the instrument embodying the expression of such purposes as governed by the statutory requirement. The index of this intention to authenticate a will under the English Statute of Victoria, so far as signing is concerned, which has been copied in many of the states, is found in the fact alone that the signature is placed at the end of the instrument, while the rule in Virginia would authorize the probate of a will "which though not signed at the foot or end might be signed in such a manner as to afford internal evidence of authenticity equally convincing."

The Arizona statute governing the execution and authentication of a will of the kind involved here is very simple, and has not seen fit to incorporate many of the safeguards considered to be necessary in England and in many of the American states. But the Arizona statute does require that the instrument be authenticated by the signature of the testator. Where a paper is propounded as a holographic will the essential thing is that the paper express a testamentary disposition of property and be wholly written and signed by the testator, and that it is so written may be proved in the same manner that other private writings are proved. Paragraphs 1206,

1207, 747, Civil Code 1913. Like the statute of frauds it is immaterial where the signature of the testator is placed *in the will* if it was placed *there* with the intention of authenticating the instrument.

Our statute does not designate where the signature shall be placed upon the instrument. But the difficulty here is that the signature is not placed anywhere upon the instrument. Neither at the end thereof, nor at the top, nor on the margin, nor in the body of it. The writing on the envelope, which is signed, is neither dispositive nor testamentary in character. The writing on the note paper, which is dispositive and testamentary in character is not signed, though more than a page of the paper is left blank. The writing upon the envelope is not a will for it lacks the essential features of a will, and the writing upon the note paper is not a will because it is not signed. There is no connection between the two writings except the statement made upon the envelope that ''This is my last and only *Will*. To be acted upon by the officers of the Humane Society in Phoenix,'' and the expression is found upon the note paper that ''This is my last and only *Will*. If I should make another later I will destroy this one.'' Considering the language expressed on each paper, the expression on the envelope is vague and indefinite. Whether Miss Tyrrell intended the writing on the envelope to be a mere label or distinguishing mark, or that she meant that a paper would be found inclosed bearing her signature as indicated, or that she inadvertently placed the wrong paper in the envelope, or whether the paper inclosed was merely a draft for further consideration, all are matters of speculation. The most reasonable inference to be drawn is that she was unaware of the necessity of signing the paper to give it authenticity. If this is not so, it is most probable that she would have signed the paper and not left blank more than a page thereof when such an act would have concluded all doubts as to her intention. But had Miss Tyrrell even acknowledged to other persons that the writing on the note paper was her last will and testament, and after her death the paper had been identified and offered for probate, it could not be proved because it lacks an essential required by statute, to wit, her signature. For in the absence of a compliance with the statutory provision in the matter of signing, her intention to sign cannot be regarded.

So if she had written and signed 'her name upon the envelope 'stating that her last will would be found among her effects in a certain trunk, and had been so precise in the description of the paper that there could be no doubt of its identification, and the instrument was found in the designated place unsigned, it could not be admitted to probate on account of the omission to sign it. Her intention must yield to the omission of a statutory requirement. The reference to a will found in the envelope proves only that she recognized the existence of a will at the time the reference to it was made, not that she means to do more by speaking of the instrument than she had already done by writing it. The doctrine of incorporation in a will of an extrinsic paper by reference which obtains in England and many of the states does not aid the matter either. The doctrine is this: When a *will is duly executed in conformity to the statute,* the testator may expressly refer to an extrinsic paper then existing, and such paper may be incorporated into and become a part of the will, provided the instrument referred to is so described as to manifest distinctly what is the paper that is meant to be incorporated. See authorities cited in notes to the case of *Bryan* v. *Bigelow,* in volume 107 Am. St. Rep., at page 71.

It may be said arguendo that the usual and ordinary mode of signing an instrument is to place the signature at the foot or end thereof, and this would appear to be the natural and logical way to sign it. If this is done and the paper contains a testamentary disposition of property and is proved to be wholly in the handwriting of the testator, it would appear that it should be admitted to probate without further ado. But if the signature is not found in the usual or natural place for signing, but does appear elsewhere *on the instrument,* at the top, or on the margin or in the body of it, such a signing would, from its very nature, be an equivocal act, and would be an uncertain indication of the testator's intent to authenticate the instrument by signing it in such manner. In holographic wills, under our statute, there is no necessity for publication by the signing and acknowledgment and the attestation of witnesses. The signing of it is the only evidence necessary that it is a final and concluded act. But if the signature is so placed on the instrument that the signing is an equivocal act, and it appears uncertain whether the

testator intended the signature to be his final and concluded act, then further and satisfactory evidence of such intent would perhaps be required.

Thus under the statute of frauds, the name commonly given to the statute, 29 Car. II, c. 3, entitled "An Act for the Prevention of Frauds and Perjuries," is the leading case of *Lemayne* v. *Stanley,* 3 Lev. 1, wherein the will written in his own hand beginning, "In the name of God, Amen, I John Stanley make this my last will and testament," but did not subscribe his name at the end of it, but did publish and have it subscribed by three witnesses in his presence, was held to be a good will; "for being written by himself, and his name in the will, it is a sufficient signing within the statute, which does not appoint where the will shall be signed, in the top, bottom or margin, and therefore a signing in any part is sufficient." This case is generally cited as authority and followed in those jurisdictions where the statutes require no more than is required by the statute of frauds. This construction of the statute of frauds, in *Lemayne* v. *Stanley,* led to the passing of the Statute 15 Vict., c. 24, requiring wills to be signed at the foot or end thereof, and following the English statute many of the states enacted a similar requirement. The purpose intended being to prevent any addition being made to the will, after the testator had executed it. We touch upon the question of the place of the signature upon the instrument in passing to emphasize our meaning, there being no signature upon it the place thereof is immaterial to a decision here.

The citations of appellee are not to the contrary. His quotation from Schouler on Wills, paragraph 316, includes but a part of it. Mr. Schouler says:

"A valid signature may be made on a separate piece of paper which is stuck or fastened to the body of the will, and contains nothing but the signature and attestation; *provided it be shown that the execution was bona fide and regular in other respects, and the paper duly fastened at or before the time of attestation."* (The part omitted by appellee is italicized.)

And in Cyc., volume 36, page 449(B) : "When a signature is essential to the validity of an instrument it is not necessary

that the signature appear at the end of the instrument. If the name of the party whose signature is required is *written by him in any part of the instrument, for the purpose of authenticating it,* it is a sufficient signature.'' (Italics ours.)

So in the following cases cited, where the instrument was not signed at the end in the customary and natural way, but the signature did appear *upon the instrument,* there was extrinsic proof that the testator did intend such signing of it to be a final and concluded act. *Sarah Miles' Will,* 4 Dana (Ky.), 1; *In re Phelan's Estate,* 82 N. J. Eq. 316, 87 Atl. 625; *Armstrong* v. *Walton,* 105 Miss. 337, 46 L. R. A. (N. S.) 552, 62 South. 173; *Kolowski et al.* v. *Fausz,* 103 Ill. App. 528. Neither does the rule that a valid will may be made on detached sheets of paper aid appellee.

''It is an established rule of law that a will, if otherwise properly and legally executed, may extend through several detached sheets of paper, coherence and internal sense being deemed, in general, sufficient to constitute a proper connection from sheet to sheet.''

See note to case of *In re Swaim's Will* (162 N. C. 213, 78 S. E. 72), reported in Ann. Cas. 1915A, at page 1207.

It may perhaps be asked: To what purpose this so long detail? I answer: To make for clearness in the promotion of a line of demarcation between the rule governing the intent with which a purpose is expressed in a duly executed and authenticated will; and the rule governing an intent to do an act required by law, which act is omitted to be done. If there be a tendency to this it is abundantly justified. If not, it is an effort only that is spent, and so much paper wasted. The instrument is not signed as required by the statute, and therefore it cannot be probated as the valid will of the deceased.

The judgment or order of the superior court is reversed and the cause remanded, with directions that the probate of said instrument as the last will and testament of said M. A. R. Tyrrell, deceased, be revoked, having such further proceedings in the matter of said estate as the law may direct. This alleged will having been propounded *bona fide,* the costs of both parties to the contest in the superior court and in this

court shall be paid out of the estate of said decedent in the due course of administration.

Reversed and remanded.

ROSS, C. J., and CUNNINGHAM, J., concur.

Whether writing name in body of holographic will is a signature thereto is discussed in notes in 29 **L. R. A.** (**N. S.**) 64; 46 **L. R. A.** (**N. S.**) 552.

On necessity of witnesses to a holographic will, see note in 14 **L. R. A.** (**N. S.**) 968.

As to what amounts to signature by testator, see note in **L. R. A.** 1915D, 902.