[Civil No. 3239.  Filed February 13, 1933.]

[18 Pac. (2d) 1112.]

In the Matter of the Estate of JENNY ADAMSON BIEHN, Deceased. CHARLES H. COOK BIBLE SCHOOL and TUCSON INDIAN TRAINING SCHOOL, Appellants, v. IRENE BIEHN COLLIER, as Administratrix of the Estate of JENNY ADAMSON BIEHN, Deceased, and IRENE BIEHN COLLIER, Appellees.

Messrs. Clark & Clark, for Appellants.

Mr. Robert H. Williams and Mr. Samuel White, for Appellees.

ROSS, C. J.—This is an appeal from an order or judgment of the superior court of Maricopa county revoking and annulling the probate of the will of Jenny Adamson Biehn and the letters of administration with the will annexed theretofore issued to Irene Biehn Collier.

The deceased was a resident of Maricopa county, and on May 1, 1930, died, leaving an estate of real and personal property in said county valued at approximately $20,000. On May 22, 1930, Irene Biehn Collier, representing herself as the daughter of the deceased and the only heir at law, filed her petition in said court asking for letters of administration and at the same time presented to the court an instrument bearing date October 16, 1929, which she alleged she believed "to be the last will and testament of said deceased . . . holographic in character and entirely in the handwriting of said testatrix." Thereafter, on June 11, 1930, the date noticed for a hearing of such petition, the court heard testimony in proof of the will, and certified as follows:

"That said Jenny Adamson Biehn died on the 1st day of May, 1930, in the County of Maricopa, State of Arizona; that at the time of her death she was a

resident of the said county and state. That the said annexed will was wholly written, dated and signed in the County of Maricopa, State of Arizona, by the said testatrix in her own handwriting, and by her own hand, and that the same was duly executed by the said testatrix on or about 16th day of October, 1929, at which time it bears date. That said decedent at the time of executing said will, as aforesaid, was of the age of twenty-one years and upwards, was of sound and disposing mind, and not under duress, menace, fraud or undue influence, nor in any respect incompetent to devise and bequeath her estate.''

Thereafter letters of administration with the will annexed were duly issued to said Irene Biehn Collier, who thereupon took charge of the estate.

On April 30, 1931, she filed a contest of said will, on the ground that it was not written, signed, and dated entirely by the deceased; that it was not proved according to law; that it was not intended to be a will, and that its execution was obtained by undue influence and fraud. Thereafter, on June 2, 1931, she filed an amended petition making a part thereof an agreement of adoption, dated May ——, 1899, between the Christian Home, a corporation, of Council Bluffs, Iowa, and George W. Biehn and Mrs. George W. Biehn (Jenny Adamson Biehn), his wife, the material part of which reads:

''That the Christian Home, the said party of the first part, by virtue of the authority vested in it by the laws of the State of Iowa, as a Home for the Friendless, incorporated under the laws of Iowa, as aforesaid, does hereby give, consent and surrender to the said Geo. W. Biehn and Mrs. George W. Biehn, his wife, parties of the second part, Mabel Irene Neese, born Feb. 5–1897, for the purpose of adoption; . . . And the said Geo. W. Biehn, and Mrs. Geo. W. Biehn, his wife, parties of the second part, do hereby adopt said child on conditions and limitations above set forth, to all of which they heartily agree. The names of the child henceforth shall be Irene Biehn,

and the said child shall have all the rights, privileges and responsibilities, which would pertain to said child were they (she) born unto the said parties of the second part in lawful wedlock. . . . ''

It is alleged that under said agreement the contestant was received into the home of said George W. Biehn and Jenny Adamson Biehn and reared as their adopted daughter; that she was taught to call them father and mother and that they treated her as their natural daughter; that when she was capable of understanding she was informed by them that she was their adopted daughter, and that thereafter she was represented by them to their friends and acquaintances to be their adopted daughter; that she fully performed on her part the contract of adoption until the death of her said foster parents, by bestowing upon them love and affection and rendering to them obedience and services such as is usual and becoming a natural daughter; that on September 1, 1916, at the age of 19½ years, she married Stanford F. Collier, but that the relation of parents and daughter was not interrupted, but continued until her parents died.

It is also alleged that said Jenny Adamson Biehn, deceased, left no heirs of her body, no adopted child other than contestant, and no surviving husband, father, mother, brothers or sisters, or their issues, at her demise, and no next of kin residing within the state of Arizona except the contestant.

She prayed for the specific performance of the agreement of adoption, and that the legatees and devisees in the will, to wit, Irene Biehn Collier and her children, Stanford F. Collier, Jr., 12 years old, Sara Jane Collier, 9 years old, and William Thayer Collier, 2 years old, Cook Bible School of Phoenix, and the Tucson Indian Training School of Escuela, Arizona, be cited to show cause why the probate of

the will should not be revoked and why the contestant should not be appointed administratrix of the estate.

All of the legatees and devisees were duly cited to appear on a day certain. The Cook Bible School and the Tucson Indian Training School filed a general demurrer to the petition, and pleaded by way of answer that the petitioner was estopped from questioning the validity of the will, having herself propounded it for probate and proved it by her own testimony. They also denied generally and specifically the allegations of the petition.

A guardian *ad litem* was appointed for the minor children, but made no answer to the petition in their behalf.

It was stipulated that the contestant, Irene Biehn Collier, is "the equitably adopted daughter of the said Jenny Adamson Biehn, deceased."

The court heard the evidence without the assistance of a jury, and revoked the probate of the will, but upon what ground did not state. The only issue, however, upon which any competent evidence was submitted was the one asserting that the will was not written, dated, and signed entirely by the deceased, and we assume that its revocation was upon that ground. The evidence on that issue may be summarized as follows:

Some time before May 1, 1930, the day on which Jenny Adamson Biehn died, she went to the office of Robert McMurchie, an attorney in Phoenix, with a view of consulting him as to her will, and, according to his testimony, said: "I want to show you my will that I have written out and get your opinion on it," or something like that. After talking with McMurchie, she left the instrument with him with the understanding that he would recast it into more formal language, without any change whatever as to the disposition of her property. McMurchie, either while

she was in his office or subsequently in her absence, wrote after the description of some of the property the words "in Maricopa County," and made two or three pencil marks on the margin. After Mrs. Biehn died, he turned the instrument over to Rev. George Logie, who in turn gave it to Judge R. C. Stanford, attorney for the estate. He says it was in the exact condition when he gave it to Logie as when deceased brought it to him, except as above stated. Judge Stanford testified that when he received it he discussed the matter with contestant and then offered it for probate; that he made careful inquiry by examining the will and "by talking with Mrs. Collier," and satisfied himself that the instrument was a will; and that at the time he presented it for probate he believed it was Mrs. Biehn's holographic will. Rev. George Logie testified he was familiar with Mrs. Biehn's handwriting, and that he was of the opinion that the instrument was wholly in her handwriting, except the words "in Maricopa County." Mrs. Collier, testifying, picked out, in addition to the words "in Maricopa County," several phrases which she said she did not believe or think were in her mother's handwriting. Mrs. H. L. Mosher testified that she was acquainted with the handwriting of deceased and that, in addition to the words "in Maricopa County," other portions of the instrument offered as her will were not written by her.

The allegations of the petition as to the adoption of contestant and her performance of the contract are not disputed. On the contrary, it is stipulated that she was "equitably adopted."

It is first contended by the contestees that the contestant is not shown by her pleadings to have any interest, and that therefore the demurrer should have been sustained. To entitle one to prosecute a proceeding to set aside the probate of a will, it is obvious

he should have some pecuniary interest in the estate. Section 3904 of the Revised Code of 1928 recognizes that the contestant should be interested in the estate. It reads:

"When a will has been admitted to probate, any person interested may at any time within one year after such probate, contest the probate or the validity of the will, upon filing in the court in which the will was proved a petition in writing, containing his allegations against the validity of the will or against the sufficiency of the proof, and praying that the probate may be revoked."

A "person interested" is one who will be directly affected in a pecuniary sense by a settlement of the estate under the will, and this means one who is affected detrimentally by being deprived of a right he would have otherwise had in the absence of a will. The statute cannot be construed as conferring the right to contest the validity of a will upon one who is deprived of nothing by it but is given benefits he otherwise could not have had. *Selden* v. *Illinois Trust etc. Bank,* 239 Ill. 67, 87 N. E. 860, 130 Am. St. Rep. 180; *Cajoleas* v. *Attaya,* 145 Miss. 436, 111 So. 359, 58 A. L. R. 1457.

The contestant is a devisee under the will of a portion of the estate. But she claims that she is entitled, by virtue of the contract of adoption and its performance by her, to the entire estate. If this contention is tenable, then she is a "person interested" in the estate, and, if the will should be sustained, she would be deprived of a property right of considerable value. Contestant does not contend that she was legally adopted by deceased and her husband, either under the laws of Iowa, where the contract of adoption was made, or the laws of Arizona, where it was largely performed. She relies solely upon the contract and what was done thereunder.

The rights of one taken as a child from its natural parents under an agreement to adopt it, but which was not done, are pretty definitely and well settled, especially where such contract has been performed in all respects except a compliance with the law regarding adoption. The courts have not always agreed as to whether such a child takes as an heir or under the contract, but they do agree that he should have that portion of the estate he would have inherited had the adoption been formal and legal. In the second headnote to *Hickox* v. *Johnston,* 27 A. L. R. 1322, local 1327 (113 Kan. 99, 213 Pac. 1060), the annotator states the rule as follows:

"While the cases are not in entire harmony, in most jurisdictions contracts to adopt, not performed by effectual adoption proceedings during the life of the adoptive parent, will, upon the latter's death, be enforced to the extent of decreeing that the child occupies in equity the status of an adopted child, or, at least, is entitled to such right of inheritance from the estate of the adoptive parent as a natural child would enjoy, where the child in question has fully and faithfully performed the duties of a child to the adoptive parent, and the circumstances require the relief as a matter of justice and equity."

While there are many other cases supporting this text, we name only the following: *Roberts* v. *Roberts,* (C. C. A.) 223 Fed. 775, *certiorari* denied in 239 U. S. 639, 36 Sup. Ct. 160, 60 L. Ed. 481; *Prince* v. *Prince,* 194 Ala. 455, 69 So. 906; *Crawford* v. *Wilson,* 139 Ga. 654, 78 S. E. 30, 44 L. R. A. (N. S.) 773; *Lee* v. *Bermingham,* 199 Ill. App. 497; *Malaney* v. *Cameron,* 98 Kan. 620, 159 Pac. 19; *Wright* v. *Wright,* 99 Mich. 170, 58 N. W. 54, 23 L. R. A. 196; *Fiske* v. *Lawton,* 124 Minn. 85, 144 N. W. 455; *Martin* v. *Martin,* 250 Mo. 539, 157 S. W. 575; *Van Tine* v. *Van Tine,* (N. J. Ch.) 15 Atl. 249, 1 L. R. A. 155; *Barney* v. *Hutchin-*

*son,* 25 N. M. 82, 177 Pac. 890; *Middleworth* v. *Ordway,* 191 N. Y. 404, 84 N. E. 291.

In some jurisdictions having adoption statutes the holding is that there must have been a strict compliance with such statutes before the child can share in the estate of the adopting parent; but our examination of these cases satisfies us they are not only in the minority, but that their conclusion works an injustice to the child that has fully performed his part of the contract.

In *Chehak* v. *Battles,* 133 Iowa 107, 110 N. W. 330, 12 Ann. Cas. 140, 8 L. R. A. (N. S.) 1130, where the contract and attendant circumstances were in effect the same as here, except the contract to adopt was with the mother and not an orphanage institution, the court said:

"The obligations of such a contract as of others are mutual, and the peculiarities of it such as emphasize the right of him who has faithfully performed his part of it to that portion stipulated by the other party. It is impossible to estimate by any pecuniary standard the value to the parties receiving a child, nor is there ever any design of so measuring the service and solace bestowed. The nature of the contract necessarily precludes all thought of returning the consideration, and after the mother has yielded the possession of her child with all that this means, and it has lived until majority as a dutiful and loving son or daughter with those who have promised to cherish him or her as their own, and that he or she shall share their estate, it is beyond the power of the adoptive parents or the courts to place the mother or child in the situation in which they were before the agreement was entered into. There is no such thing in cases like this as placing the parties *in statu quo,* and the remedy must be by specifically enforcing the contract or the denial of rights which have been fully earned, and in good conscience and justice ought to be enforced."

The rights of a child under an agreement to adopt are stated in 1 Corpus Juris 1377, § 21, to be:

"The implied covenant arising from a contract to adopt, not legally executed, where the child has fulfilled its part of the contract, is that the infant should receive a child's share of the estate of the foster parent. In case of intestacy that share is fixed by the statutes of descent and distribution, but if there is a will, it is fixed by the will. The mere contract to adopt is not sufficient of itself to make the child a legal heir of the promisor, because the right to take as heir exists only by operation of law. The child takes in these cases by virtue of the contract and by way of damages or specific performance. An agreement to adopt does not prevent the person making the agreement from disposing by will of all his property to other persons than the child to be adopted; but an agreement, either express or implied, to give the adopted child a certain portion of the adoptive parent's property will be enforced."

In all these cases the consideration is recognized as twofold and mutual: (1) The surrender of the child by its natural parents to the adopting promisor, and (2) the fulfillment of the contract by the child. The contract is for the benefit of the child, and, in order that he may realize thereon, he must do his part to establish and maintain the relationship or status of a natural child to his *quasi* parents. When he has done this faithfully by association, filial affection, obedience, and services, he is entitled to the fruits of the contract. *Tuttle* v. *Winchell*, 104 Neb. 750, 178 N. W. 755, 11 A. L. R. 814.

Here the contract to adopt originated with an orphanage institution, but we think such origin, especially when the institution's right to enter into the contract is not questioned, should not militate against the child's rights when she has fully performed. It will be noticed that in all, or most, of the cases the greatest emphasis is placed upon this consideration.

We are satisfied contestant was an interested person and had a right to contest the will.

Contestees cite the cases of *Baumann* v. *Kusian,* 164 Cal. 582, 129 Pac. 986, 44 L. R. A. (N. S.) 756, and *Corison* v. *Williams,* 58 Cal. App. 282, 208 Pac. 331, as holding that a contract to adopt will not be enforced. As we read the first case, the holding there was that the allegations in the complaint of the terms of the contract did not show that the contract was definite and certain and also just and fair, and for that reason the complaint was held defective. In the other case the holding was that the evidence was not sufficient to support a finding that the contract was, as pleaded, that the deceased would leave to her adopted daughter all her property upon her death. We think both these cases recognize the general rule quoted above, but simply hold that the facts pleaded or proved do not bring them within the rule.

In *Rogers* v. *Schlotterback,* 167 Cal. 35, 138 Pac. 728, it was held that an agreement to make another the promisor's heir, when acted upon by the beneficiary, is enforceable. The facts were that the promisor had orally agreed to adopt the child and make him his heir to share in his estate equally with his only other child. In pursuance of this oral agreement, the child became a member of the promisor's family, assumed his name, and was recognized and treated as his own child. The court said:

"The doctrine of this court as to the enforcement of such contracts has been so fully and clearly stated and affirmed in such cases as *Owens* v. *McNally,* 113 Cal. 444, 45 Pac. 710, 33 L. R. A. 369, and *McCabe* v. *Healy,* 138 Cal. 81, 70 Pac. 1008, as to render extended discussion of the proposition unnecessary here. Suffice it to say, if such a contract may fairly be said to be clearly and satisfactorily shown, if it is clear, certain, and definite in its terms, and if specific performance would not be harsh and oppressive

and unjust to innocent third parties (see *Owens* v. *McNally, supra*), the contract, even when resting in parol, will be enforced, . . . '' and added: ''There is nothing in *Baumann* v. *Kusian, supra,* opposed to this view.''

It is next contended that, because the contestant offered the will for probate and proved it by her own testimony, she is estopped to prosecute this proceeding to revoke it. A proceeding to probate a will and one to contest its validity after probate are different. The latter proceeding may be instituted at any time within one year of the probate, and is specifically authorized by section 3904, *supra.* If after a will has been probated any person interested discovers that it is for any reason invalid, he may contest it. On the offer of a will for probate, the question involved is its admission to probate.

''But the admission of a will to probate is not a final adjudication of the validity thereof. Our statute expressly provides that 'When a will has been admitted to probate, any person interested may, at any time within one year after such probate, contest the same or the validity of the will' (Code Civ. Proc., § 1327), and, 'If no person, within one year after the probate of a will, contest the same or the validity thereof, the probate of the will is conclusive; saving to infants and persons of unsound mind, a like period of one year after their respective disabilities are removed' (Id., § 1333). The right to contest a will after its admission to probate is thus expressly reserved to all the heirs.'' *In re Dorn's Estate,* 190 Cal. 343, 212 Pac. 206.

Our statutes are the same as California's, with differences immaterial here. The proceeding to contest the validity of a will is, under the statute, open to any person interested for one year after its probation. This language is all-inclusive, and literally applies to one who has propounded the will for probate and testified in support thereof, as much as to

any other interested person. If the instrument had been contested when offered for probate upon the grounds now urged against its validity, the decision thereon would doubtless have concluded all who were parties thereto and their privies, except upon appeal. Section 3896, Rev. Code 1928; *In re Hildebrand's Estate,* 81 Okl. 197, 197 Pac. 445.

We do not think, in view of the provisions of our statutes, that contestant's being a witness in support of the instrument should estop her to contest its validity after probation.

Finally, it is contended that the evidence does not support the implied finding of the court that the instrument was not the holographic will of the deceased. A holographic will is one "wholly written by the testator." Section 3637, Rev. Code 1928; *Estate of Tyrrell,* 17 Ariz. 418, 153 Pac. 767; 28 R. C. L. 161, § 116. There was a substantial conflict in the evidence. According to the testimony of the contestees, the instrument was wholly written by the deceased, except the words "in Maricopa County." If these words were inserted without the knowledge of the testatrix, they should be disregarded. 28 R. C. L. 186, § 144. But, if they were written in with her knowledge, they would become a part of the instrument so that it would not be wholly written by her. The requirement that the instrument be wholly in the handwriting of the testator is violated where he adopts the printed date of a letter-head as the date of his will. *In re Bernard's Estate,* 197 Cal. 36, 239 Pac. 404; *In re Noyes' Estate,* 40 Mont. 190, 105 Pac. 1017, 20 Ann. Cas. 366, 26 L. R. A. (N. S.) 1145; 28 R. C. L. 163, § 118. The decisions almost literally enforce the legislative definition of a holographic will. The evidence is not clear whether the deceased knew or did not know of this insertion into her will. But, granting that she did not know of it, still there

is evidence that several other phrases of the instrument were not in her handwriting. The evidence of the contestees sharply disputed this. This presented a question of fact for the decision of the court, and in such a situation, following our uniform rule, we will not disturb that decision. *In re Bernard's Estate, supra,* it is said:

"The due execution of a will is a question of fact, and its determination by the trial court must be sustained, unless that determination is unsupported by the evidence." See, also, *In re Brook's Estate,* 214 Cal. 138, 4 Pac. (2d) 148.

The judgment is affirmed.

LOCKWOOD and McALISTER, JJ., concur.