[Civil No. 4153. Filed June 24, 1940.]

[103 Pac. (2d) 669.]

In the Matter of the Estate of JAMES MORRISON, Also Known as SCOTTY MORRISON, Deceased. TONY KOMADINO, Appellant, v. ELIZABETH JACK, Appellee.

Mr. Carl D. Hammond, for Appellant.

Mr. E. Elmo Bollinger and Mr. Charles P. Elmer, for Appellee.

ROSS, C. J.—Tony Komadino appeals from a judgment and order refusing to admit to probate the will of James (Scotty) Morrison, and to issue to him letters testamentary. Komadino's petition was opposed by Elizabeth Jack, the mother and sole heir at law of the decedent, upon the grounds:

(1) That the language used in said will is insufficient to constitute a testamentary disposition of property.

(2) That said paper was never executed as or for a will and was never intended by said deceased to be his last will.

(3) That said instrument was not entirely written, dated and signed by the hand of the testator himself, in this, that no part thereof was written by the hand of the said James Morrison, deceased, nor is the signa-

ture thereon "James Morrison" the signature of the said testator.

(4) That at the time the said James Morrison, deceased, made and subscribed said alleged will he was not of sound mind or memory, or in any respect capable of making a will.

(5) That the petitioner and his wife, Kattie Komadino, devisees and legatees under the will, procured such will through undue influence and by furnishing the testator with food, wines and liquors; by promising him that they would support and care for his mother the rest of her life; by representing to him that the estate if willed to them would escape inheritance and other taxes under the laws of Great Britain, of which Empire Elizabeth Jack was a citizen. That under such promises the decedent wrote the will while he was in petitioner's home and while under the influence of intoxicating liquors to such an extent that he believed the representations.

The grounds of opposition stated above were put in issue by general and special denials. The case was tried before the court with a jury. There were submitted to the jury four interrogatories as follows:

"1. Was said purported will wholly written by the testator, James Morrison, and signed by him in his own hand?

"2. Was said purported will executed by the testator, James Morrison, as or for a will and intended by him to be his will?

"3. Was said testator, James Morrison, of sound mind and memory, and mentally capable of making a will, at the time when said purported will was executed?

"4. Was the execution of said purported will procured through fraud or undue influence exercised over said testator, James Morrison, by the defendant, Tony Komadino and Katte Komadino, his wife?"

The first interrogatory was answered by the jury in the affirmative; the second in the negative. Three and four were not answered. Upon the special verdicts the court entered its judgment denying the admission of the will to probate. It is from this judgment and the order overruling his motion for a new trial that Komadino appeals.

The question is, do the answers to Interrogatories 1 and 2 justify the court's action. These answers are to the effect that the instrument offered as testator's will was wholly written and signed by him, but that he did not intend it to be his will. Interrogatories 3 and 4, not having been answered by the jury, presumably have no support in the evidence. The burden was on contestant to sustain his allegations that the testator was of unsound mind and memory at the time he wrote the will, or that he wrote it under the pressure of undue influence, or at a time when too intoxicated to know what he was doing. There were no findings on these issues, and we must assume that there was no evidence to support such charges or, if there was any evidence on the issues, the jury did not believe it or found it insufficient or else the questions propounded would have been answered.

The court apparently denied the admission of the will to probate on the ground that, quoting,

"there was some testimony from which the jury might have drawn and probably did draw the inference that the decedent was intoxicated to such an extent at the time when the will was written, that he was incapable of having a testamentary intent."

And, continuing the quotation: '

"The court takes a different view of the evidence relating to that subject"

(intoxication), but stated that he felt the law made the jury's verdict binding upon the court and rejected the offer of probate.

There was an interrogatory put to the jury in these words: "Was said testator, James Morrison, of sound mind and memory, and mentally capable of making a will at the time when said purported will was executed?" and the jury failed and refused to answer it, either because there was no evidence on which to base an answer, or, if there was any evidence on the issue, found it insufficient or unworthy of belief. An answer to this question in the affirmative by the jury would have shown conclusively that the jury gave credence to the testimony about the testator's intoxication. The court itself did not believe testator was for any reason incapable mentally to make a will at the time, and said so. The jury no doubt on that point was in accord with the court.

The jury's answer to Interrogatory No. 2 is made the basis of the court's judgment refusing to admit the will to probate. By this answer the jury found that the instrument offered as James Morrison's will was not intended by him to be a will. This calls for an examination of the instrument. It reads:

"If case of death i sign everything that be longs to me over to Mr. and Mrs. Komadino Oatman Arizona

Dec. 9, 1937 JAMES MORRISON
 Witness MRS. E. JACK
 LOUIS ZUPET Carnety Croft Mulben
 Banffshire, Scotland."

The language of this instrument is certainly testamentary in character. It shows on its face that it was written in contemplation of death. It cannot be said to be ambiguous or obscure. When an instrument is submitted for probate as the will of a decedent, and it contains no ambiguities, it is the province of the court to determine its testamentary character and to construe it. If it speaks clearly, its utterances are binding upon the court as well as everybody else.

The evidence is, and there is none to the contrary, that the testator wrote the will in his own handwriting and then handed it to Kattie Komadino and asked her to place it with others of his papers that he had left with her from time to time for safekeeping. There is no suggestion that he wrote the paper idly for his amusement, or to see if he could write a will, or for mere practice. On the contrary, all the evidence is to the effect that he intended it as his will, that he spoke of it as his will, and that it was in fact and deed what it purported to be on its face. We can find no evidence in the record to the contrary.

The trial judge, who heard all the testimony and observed the witnesses, had this to say in his order denying the motion for new trial:

"The Court is of the opinion that it was shown by a strong preponderance of the evidence, that the instrument offered for probate as the last will and testament of James Morrison, deceased, was written and signed by him in his own hand, and was intended by him to be his last will and testament, and that at the time of its execution, he was of sound mind and memory and mentally capable of making a will, and was not acting through fraud or undue influence exercised over him by the defendant Tony Komadino or any other person, and was under no legal disability to make a will. It is the further opinion of the Court that there was little evidence of a substantial and credible nature to justify the jury in its finding on Interrogatory No. 2, which was submitted to it and answered by it in the negative. . . ."

We have examined the evidence and we concur in the above statement of the court, except we find no evidence to support the finding of the jury on Interrogatory No. 2. We also concur in the court's opinion that if the special verdicts of the jury were supported by evidence they should be binding upon the court, but where there is no evidence to support any of the special findings such verdict is not binding.

■ The contestant suggests the will is not wholly written and signed by the testator. According to the evidence, after the testator had written the will he asked Louis Zupet to witness it and Zupet wrote thereon "1937 Witness Louis Zupet." All the rest of the instrument was written by the decedent. It is claimed the addition of this matter at the foot of the will by another than the testator destroyed it as a holographic will. Section 3637, Revised Code of 1928, reads:

"Every last will and testament, except where otherwise provided by law, shall be in writing and signed by the testator, or by some other person by his direction and in his presence, and shall, if not wholly written by himself, be attested by two or more credible witnesses, above the age of fourteen years, subscribing their names thereto in the presence of the testator. When it is wholly written by the testator, the attestation by subscribing witnesses is not necessary."

■■ Under this section, a will wholly written and signed by the testator is a good will. It need not be dated as required by the laws of some of the other states. The important thing is that the testamentary part of the will be wholly written by the testator and of course signed by him. In the *Estate of Tyrrell,* 17 Ariz. 418, 153 Pac. 767, 769, we said:

" . . . Where a paper is propounded as a holographic will the essential thing is that the paper express a testamentary disposition of property and be wholly written and signed by the testator, . . . ."

It said in 68 Corpus Juris, 723, section 405:

"While in most jurisdictions the formalities of attestation and subscription by witnesses are not necessary to the validity of a holographic will, yet the fact that an attestation clause or the names of subscribing witnesses do appear on the instrument will not affect it or lessen its validity, . . . "

*Estate of Biehn,* 41 Ariz. 403, 18 Pac. (2d) 1112. is in accord with the general rule. All that was held in that case was that the testamentary part of the will should be wholly written by the testator.

 We think the court erred in not admitting the will to probate. We find no evidence in the record to support the jury's answer to Interrogatory No. 2. There was some evidence that the testator might have been intoxicated at or about the time of writing the will. While, as we have analyzed the evidence and the special findings, it seems that neither the court nor the jury believed that he was so intoxicated as not to be capable of making a will, perhaps justice requires that the case be reversed and remanded for a new trial at which, if there be any evidence showing or tending to show such intoxication at the time he wrote the will, the court should submit an interrogatory on that issue and require an answer. By this statement we do not intend to limit the new trial to that issue alone but to any and all issues made by the pleadings and finding support in the evidence.

The judgment is reversed and the cause remanded for a new trial.

LOCKWOOD and McALISTER, JJ., concur.