IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

———————————————

IN RE THE ESTATE OF
JAMIE LEANDRA BIXBY, DECEASED

LINDA MARIE BIXBY, KELLI BIXBY BAYS, DEBRA L. ALRED, MONICA L.
WILLIAMS, AND STEPHANIE LYNAM,
*Petitioners/Appellees*,

*v.*

DARCEY ELIZABETH LEVENDIS,
*Respondent/Appellant*.

No. 2 CA-CV 2024-0366
Filed July 11, 2025

———————————————

Appeal from the Superior Court in Gila County
No. S0400PB202300105
The Honorable Timothy M. Wright, Judge

**AFFIRMED**

———————————————

COUNSEL

Jaburg & Wilk P.C., Phoenix
By Kathi M. Sandweiss and Lauren L. Garner
*Counsel for Petitioners/Appellees*

Harper Law Offices PC, Payson
By Michael J. Harper
*Counsel for Respondent/Appellant*

---

## OPINION

Presiding Judge O'Neil authored the opinion of the Court, in which Judge Brearcliffe and Judge Gard concurred.

---

O' N E I L, Presiding Judge:

¶1        Before Jamie Bixby died, she left behind two sticky notes that Beth Levendis asserts expressed an intent to leave Bixby's entire estate to her.  Levendis appeals from the superior court's decision on summary judgment determining that the sticky notes lacked a signature and therefore were not a valid will.  She claims the letters "XO," appearing at the end of the second note, satisfied the signature requirement for a valid will.  We affirm because no reasonable person could find that Bixby intended the "XO" symbol as a signature to authenticate the notes.

### Background

¶2        The relevant facts are undisputed.  Sheriff's deputies found Bixby dead at her home in June 2023.  During their investigation, deputies found two sticky notes on a coffee table.  Each note contained a handwritten message.  The first note read as follows:

> I'm sorry, I just don't have the tools for this.
> Beth gets everything.

The second note stated:

> Also, sorry universe, thank you for the
> experience . . . . maybe XO

¶3        After learning of her death, Bixby's five sisters applied for informal probate of her estate, alleging that they were "unaware of any unrevoked testamentary instrument" and that there were no other surviving heirs.  Levendis, a friend of Bixby, objected and petitioned for formal probate.  She asserted Bixby had "left a holographic will naming [Levendis] as the sole beneficiary," in the form of the two sticky notes found on the coffee table.  The sisters later moved for summary judgment, seeking a determination that the notes were not a valid will and that Bixby had therefore died intestate.  The superior court granted the sisters' motion, determining that the notes, even if read together as a single combined

instrument, were not a valid will because they lacked a signature. The court thus determined that Bixby had died intestate, leaving her sisters as the heirs of her estate. We have jurisdiction over Levendis's appeal from the court's final judgment. *See* A.R.S. §§ 12-120.21(A)(1), 12-2101(A)(9).

**Discussion**

¶4        Levendis argues the superior court erred in determining that the "XO" written at the end of the second note was not a signature. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review a decision on summary judgment de novo, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Takieh v. O'Meara*, 252 Ariz. 51, ¶ 11 (App. 2021). A party opposing summary judgment cannot, however, rely on unproven assertions of fact, *Badia v. City of Casa Grande*, 195 Ariz. 349, ¶ 29 (App. 1999), and "speculation is insufficient . . . to defeat summary judgment," *McCleary v. Tripodi*, 243 Ariz. 197, ¶ 21 (App. 2017). We will affirm a grant of summary judgment if the nonmoving party's evidence "has so little probative value that no reasonable person could find for its proponent." *State Comp. Fund v. Yellow Cab Co. of Phx.*, 197 Ariz. 120, ¶ 5 (App. 1999).

¶5        A writing may serve as a valid will only if executed with testamentary intent. *In re Estate of Muder*, 159 Ariz. 173, 175 (1988). "Testamentary intent requires that the writing, together with whatever extrinsic evidence may be admissible, establish that the testator intended such writing to dispose of his property upon his death." *Id.* Testamentary intent alone, however, is not enough make a valid will. "[T]he right to make a testamentary disposition of property [i]s of statutory creation only, and [i]s available only on strict compliance with the requirements of the statute." *In re Wilkins' Estate*, 54 Ariz. 218, 222 (1939); *see also In re Tyrrell's Estate*, 17 Ariz. 418, 422 (1915) ("The omission of any of the requirements of the statute will not be overlooked on the ground that it is beyond question that the paper was executed by the decedent as his will . . . and there is no question of his testamentary purpose . . . ."). A valid will must also, therefore, satisfy statutory requirements. Ordinarily, this requires compliance with A.R.S. § 14-2502: the purported will must be in writing, signed, and witnessed by at least two people. An exception, however, exists for a "holographic will" under A.R.S. § 14-2503. According to that statute, "[a] will that does not comply with § 14-2502 is valid as a holographic will,

whether or not witnessed, if the signature and the material provisions are in the handwriting of the testator."  § 14-2503.

¶6      In this case, Bixby's sticky notes were not witnessed.  They do not satisfy § 14-2502.  They can, however, serve as a valid will if they meet the requirements of a holographic will under § 14-2503, meaning they must be both handwritten and signed.  *See In re Mulkins' Estate*, 17 Ariz. App. 179, 181 (1972) (holographic will requirements satisfied where "testamentary provisions" and "signature" in testator's handwriting).  If the notes fail to meet these requirements, they cannot serve as a will, and we will not reach the question of testamentary intent.  *See Tyrrell's Estate*, 17 Ariz. at 422.  It is undisputed that Bixby wrote the messages on the sticky notes by hand.  The sole question on appeal is whether, as Levendis asserts, Bixby signed the notes using "XO" as her mark.

¶7      Although § 14-2503 does not define a "signature," a signature generally is a person's name affixed to a document with the intention of authenticating it as belonging to the signer.  *Sign*, Black's Law Dictionary (6th ed. 1990) ("To affix one's name to a writing or instrument, for the purpose of authenticating or executing it, or to give it effect as one's act," or "[t]o attach a name or cause it to be attached to a writing by any of the known methods of impressing a name on paper"); *see Haywood Sec., Inc. v. Ehrlich*, 214 Ariz. 114, ¶¶ 12-15 (2007) ("[T]he defining characteristic of the requirement that a judgment be 'signed' is that the document has affixed to it in some form the name of the judge that evidences an *intention of authentication*."); *Bishop v. Norell*, 88 Ariz. 148, 151 (1960) ("[T]he general rule is that a writing . . . is 'signed' in accordance with the statute of frauds if it is signed by the person to be charged by any of the known modes of impressing a name on paper, . . . provided that same is done with the intention of signing.").  Arizona courts have recognized that other marks may also serve as signatures, *see Wilkins' Estate*, 54 Ariz. at 223, if made with the intent to authenticate a writing as that of the signer, *see Allstate Util. Const., LLC v. Towne Bank of Ariz.*, 228 Ariz. 145, ¶ 7 (App. 2011) ("A party 'signs' a document by marking the document with the intention to authenticate it."); *State v. McIntosh*, 213 Ariz. 579, ¶ 10 (App. 2006) (jury verdict is "signed" for purpose of Rule 23.1(a), Ariz. R. Crim. P., "[a]s long as the mark used evidences authentication of the verdict by the jury foreperson"); Restatement (Second) of Contracts § 134 (1981) ("The signature to a memorandum may be any symbol made or adopted with an intention, actual or apparent, to authenticate the writing as that of the signer.").

¶8        Our general definition statute in A.R.S. § 1-215 limits the use of a mark as a signature.  It states that a signature "includes a mark, if a person cannot write, with the person's name written near it and witnessed by a person who writes the person's own name as witness."  § 1-215(37).  Bixby's "XO," even if she had intended it as a signature, does not qualify under that standard.  It is undisputed that Bixby could write, her name appears nowhere on either sticky note, and the notes were not witnessed.  But in *Wilkins' Estate*, our supreme court determined that the language of § 1-215, as it appeared in an older statute, did not apply to wills, concluding that "the general statute describing under what circumstances a mark might be used" did not limit the special statute governing wills. 54 Ariz. at 226.  It reasoned that the purpose of the general definition statute was satisfied for wills "in view of the fact that an instrument of this kind must always have subscribing witnesses who can testify to the identity of the testator."  *Id.* at 227.  That reasoning, of course, does not apply to a holographic will signed without witnesses.  Section 1-215 provides that its definitions apply to "the statutes and laws of this state, unless the context otherwise requires," and it is difficult to discern why the context of § 14-2503 should require departure from the conditions that § 1-215 provides for the use of a mark in place of a signature.  Nonetheless, because we are bound by *Wilkins' Estate*, we assume that a mark need not satisfy § 1-215 to qualify as a signature.

¶9        "XO" is not a signature in the usual sense.  It is an abbreviation, commonly appended to notes and messages, that symbolizes "hugs and kisses."  *See Peters v. Macchiaroli*, 74 Ariz. 62, 66 (1952) (matters of common knowledge are proper subject of judicial notice); *see also XO*, Dictionary.com, https://www.dictionary.com/browse/XO (last visited June 23, 2025) ("hugs and kisses"); *X*, Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/x (last visited June 23, 2025) ("[U]sed at the end of an informal piece of writing to represent a kiss[.]"); *O*, Oxford Eng. Dictionary, https://www.oed.com/dictionary/o_n5 (last visited June 23, 2025) ("Used to symbolize a hug, esp. at the end of a letter, greeting card, or the like.  Only in combination with *x* . . ., as in xox, xoxo, etc.").  When "XO"—or any from among its vast array of playful variants such as XOXO, XXX OOO, XOX, etc.—is used in this way, it is not being used to authenticate a document.  Its meaning instead expresses affection, friendliness, familiarity, or other such sentiments that a representation of "hugs and kisses" naturally invokes.  Nothing about this ordinary usage suggests an intent to validate the contents of a writing or adopt it as the writer's own.

¶10        Levendis does not dispute that "XO" commonly means "hugs and kisses," but she asserts that Bixby used the mark on this occasion to represent her signature, notwithstanding its other, more typical meaning. In support of her argument, both on appeal and below, Levendis points to evidence that Bixby intended Levendis to receive her estate. In other words, Levendis urges *testimonial* intent. *See Muder*, 159 Ariz. at 175. At oral argument, by contrast, the superior court suggested that the valid use of a mark as a signature depended on *signatory* intent, not testimonial intent. It noted the distinction between "an intent to have a testamentary instrument" and "an intent to authenticate the document." Levendis suggested that distinction "might be splitting hairs" and that "the definition of a signature" is satisfied whether the intent is "authenticating as a signature or creating a testamentary document." The court's analysis was correct. The crucial question is whether the mark evinces an intent to sign. *See Tyrrell's Estate*, 17 Ariz. at 425, 428; *McIntosh*, 213 Ariz. 579, ¶ 10.

¶11        Levendis notes that the "cross-mark," written as an "X," has traditionally been used and accepted as a mark representing a signature, despite the many other possible meanings of "X." Levendis correctly asserts that a mark need not take any particular form to serve as a valid signature. *See* 79 Am. Jur. 2d *Wills* § 202 (2025) (no specific mark or symbol necessary to execute valid signature on will). When Arizona courts have approved the use of a mark as a signature, however, it has been in circumstances where the nature of the mark and its context suggested the mark had been placed with signatory intent. *See Allstate*, 228 Ariz. 145, ¶ 7; *McIntosh*, 213 Ariz. 579, ¶ 10; *Wilkins' Estate*, 54 Ariz. at 224.

¶12        For example, in *Wilkins' Estate*, our supreme court found the mark of "X" a valid signature on a purported will, even though the testator's name did not appear anywhere on the document. *See* 54 Ariz. at 220, 224-25. The cross-mark, however, has a long history of use and recognition as a substitute for a signature, especially when the signer is illiterate or unable to write. *See, e.g., Cunningham v. Hallyburton*, 174 N.E. 550, 552-53 (Ill. 1930) (cited in *Wilkins' Estate*, 54 Ariz. at 223-25); *Franklin v. Martin*, 73 S.W.2d 919, 919 (Tex. App. 1934); *In re Dombrowski's Estate*, 125 P. 233, 234-35 (Cal. 1912); *In re Corcoran's Will*, 129 N.Y.S. 165, 167-70 (N.Y. App. Div. 1911). Levendis has identified no such history to support the use of "XO" in similar fashion, and we have found none. Moreover, in *Wilkins' Estate*, the will was dated and signed in the presence of witnesses, and the cross-mark was placed at the end of the document beneath these words: "Signed by my mark this 30th day of March, 1937; in presence of [named witnesses]." 54 Ariz. at 220. The intent to sign was clear from the mark's

form, context, and placement on the document.  Not so here.  In this case, neither the mark itself nor anything else written on the sticky notes identifies the notes as belonging to Bixby, much less that she intended the mark to authenticate them.  Although Levendis points to Bixby's placement of the "XO" symbol at the end of the second sticky note, this placement suggests nothing more than the common use of the symbol to represent "hugs and kisses" at the end of a message.

¶13        In opposing summary judgment, Levendis offered numerous examples of Bixby's use of "XO" and similar combinations of X and O in informal notes and messages.  Levendis argues on appeal this evidence supports an inference that Bixby used "XO" to represent her signature.  We disagree.  Bixby might have adorned her letters, emails, and text messages with hugs and kisses numbering in the hundreds or even thousands, but the frequency and number of such affectionate expressions do not suggest that Bixby ever used the same or similar symbols with an intent to authenticate a document as her own.  To the contrary, Bixby's regular use of those symbols, according to the typical fashion in which they are commonly used, suggest that she intended them to express their ordinary meaning as an abbreviation for "hugs and kisses."  None of the examples in the record provide evidence that Bixby ever used Xs and Os with any other meaning, much less that she intended the "XO" at issue in this case to authenticate the sticky notes.

¶14        As we have explained, if a document does not satisfy the statutory requirements, it fails as a will, even when testamentary intent is clear.  *See Wilkins' Estate*, 54 Ariz. at 222; *Tyrrell's Estate*, 17 Ariz. at 422.  Absent a signature for a holographic will under § 14-2503, we do not reach the question of testamentary intent.  *Tyrrell's Estate*, 17 Ariz. at 422.  Testamentary intent, therefore, does not itself establish a mark as a signature.  The *signatory intent* to authenticate a document by signing it is necessarily distinct from the *testamentary intent* to provide for the disposition of property upon death.  *See id.* at 428 (clarifying "a line of demarcation between . . . the intent with which a purpose is expressed in a duly executed and authenticated will" and the intent to sign the will as required by law); *see also In re Morrison's Estate*, 55 Ariz. 504, 509-10 (1940).

¶15        Signatory intent serves its own, separate function:  it authenticates a document as the signer's own.  *See* Restatement (Second) of Contracts § 134; *see also Wilkins' Estate*, 54 Ariz. at 221 (statutory requirements enacted to reduce fraud and forgery in wills).  It verifies both that the signer is the one adopting the document and that the document

expresses what the signer intends to adopt. *See Wilkins' Estate*, 54 Ariz. at 227 (approving cross-mark in place of signature because "there is little or no chance of fraud being perpetrated" when will is marked in presence of "subscribing witnesses who can testify to the identity of the testator"); *Tyrrell's Estate*, 17 Ariz. at 427 (signature serves "to prevent any addition being made to the will, after the testator had executed it"). There is no doubt that an author may intend to sign a document, verifying its content and adopting it as his own, yet without intending the document to serve as his will. In the same way, an author may draft a document he hopes will provide for disposition of his property upon his death, yet never place a mark or signature upon the document with the intent to authenticate it. *See Tyrrell's Estate*, 17 Ariz. at 428.

¶16 In this case, nothing in the "XO" mark itself, the context of the sticky notes, or the extrinsic evidence proffered by Levendis suggests that Bixby intended to use that mark to authenticate the sticky notes as her own. There is no meaningful evidence that the mark meant anything other than "hugs and kisses," and no reasonable person could conclude that Bixby used the mark with signatory intent. Levendis's assertion that Bixby intended the mark as a signature is speculative, and such speculation cannot defeat summary judgment. *See Badia*, 195 Ariz. 349, ¶ 29.

## Disposition

¶17 We affirm the judgment of the superior court. In our discretion, we deny the sisters' request for attorney fees under A.R.S. § 12-349. *See Reynolds v. Reynolds*, 231 Ariz. 313 ¶ 16 (App. 2013). As the prevailing party on appeal, however, the sisters are entitled to their costs upon compliance with Rule 21, Ariz. R. Civ. App. P. *See* A.R.S. § 12-341.