OPINION AND ORDER

OPENING STATEMENT

The foregoing opinion and order addresses two matters. First, we answer Appellees’ Motion to Dismiss and, second, we decide the merits of the appeal from the final order granting Appellees exclusive use and occupancy rights to a tract of farm land in Hotevilla.

FACTUAL AND PROCEDURAL BACKGROUND

A. The Patties

Appellant, Ruth Smith, and Appellees, Joyce James, Darlene Ahownewa, and Lorna Quamahongnewa, are enrolled members of the Hopi Tribe from the Village of Hotevilla. Findings and Judgement, (F.J.), at 1. Appellees are the granddaughters of Martha Bolehongna, and the daughters of Mollie Honeyestewa, and currently reside on the Hopi Reservation. Amended, Petition to Quiet Title and for Injunctive Relief, (Amend. Petition, at 1, 4) (James lives in Kykotsmovi, and Quama-hongnewa and Ahownewa live in Hotevil-la). Appellant is the daughter of Martha Bolehongna. Appellant’s Brief (Appellant B.), at 1. Appellant left the Hopi reservation in 1938 (F.J. at 4) and now resides on the Yavapai-Apache Reservation with her husband Ted Smith, the Yavapai-Apache tribal chairman. Answer to Amended Pc- *321 tition to Quiet Title and for Injunctive Relief/Counter Petition (Answer), at 3.

B. The Dispute over Occupancy and Use Rights

At issue is a tract of farming land located within the Village of Hotevilla upon which there are orchards and bean fields. See (Appellant B.), at 1. The parties disagree about who has exclusive rights to use and occupy the land. Appellant asserts that her father and he gave her the property in 1954 in an oral “will”. (Answer, at 2, 5). Appellees claim, however, that pursuant to Hopi tradition, their mother, Mollie, got the land since she remained on the land and cared for her mother in her old age while Ruth Smith was “disowned” by her mother and lost her rights to inherit the land because she married a non-Hopi, moved off the reservation, and failed to participate in Hopi ceremonies. (Amend. Petition, at 3, 5) (referring to their uncle’s assertion that Smith was “disowned”). Consequently, Appellees argue that because they have assumed the role of caring for the land, rights to the land transferred to them in accord with Hopi tradition. See (Amend. Petition, at 3-4); Appellee’s Brief (Appel-lee B.), James’ Affidavit, response to Paragraph 9. They further state that their uncle, Stephen Albert, affirmed their rights to the land because he told them that Appellant had no lights. See (Amend. Petition, at 4, Exhibit D).
This dispute came to the forefront when, in the summer of 1993, Appellant and her son placed metal fencing stakes on the property and, in May of 1994, planted fruit trees on the property. (Amend. Petition at 4); accord (Answer at 4). Appellees allege these modifications interfere with their use of the property and are contrary to the Hopi way. (Amend. Petition at 4); Petitioners’ Answer to Respondent’s Counter Petition (P. Answer), at 2. In a letter dated May 30, 1994, addressed to Appellant’s husband, Appellees requested that Appellant remove the stakes. (Amend. Petition, at 4-5, Exhibit E) In response, Appellant sought advice of counsel who wrote to Appellees stating that Appellant had rights to the land and further informing Appellees that if they “persisted in harassing” Appellant she would be forced to take legal action. (Amend. Petition, Exhibit F).

C. Procedural History at the Trial Court Level

On July 26, 1994, Appellees requested that the Village resolve the dispute between the parties. (Amend. Petition, at 2) Concurrently, Appellees filed a Petition for a Preliminary Injunction in the Hopi Tribal Court. See Verified, Petition for In-junctive Relief (V.P.I.R.). On August 2, 1994, the Village Board of Directors requested that the Hopi tribal court resolve the matter. Consequently, Petitioner’s amended their petition to include a Quiet Title action. (Amend. Petition, at 3, 7) Respondent answered with a counterclaim requesting the court issue an order quieting Petitioner’s’ title. (Answer) After numerous continuances, Petitioners filed their response to the counterclaims. See Petitioners’ Answer to Respondent’s Counter Petition, (P. Answer).
On April 30, 1995 trial court judge ordered a hearing to be held on the issue of ownership and relinquishment of land by female members of Hotevilla who marry non-Hopis and live outside the reservation for extended period of time. A trial was held on June 25, 1995, in which both parties presented evidence. (F.J., at 1) However the hearing originally scheduled for March 31, 1995 was not held until March 27, 1997 due to numerous requests for continuances. At the hearing in the Vil *322 lage of Hotevilla, the court took testimony concerning the custom and traditions of Hotevilla from witnesses selected by the pai’ties. (F.J., at 1)

D. Appeal of the Trial, Court’s Decision.

On April 17, 1998 trial court entered “Findings and Judgement” in the matter of James, et al. v. Smith, 94CIV0000019, finding for the Petitioners. On May 6, 1998, Respondent’s counsel filed a Notice of Appeal (hereinafter Notice) with the Hopi Tribal Court. The same day, Respondent’s counsel Tiled her Notice of Withdrawal as Attorney for Record. Two days later, Petitioners’ counsel also filed Notice of Withdrawal as Counsel of Record. Both parties now proceed pro per, without the assistance of counsel.
In February 1999, Chief Justice of the Hopi Appellate Court, Emory Sekaquap-tewa, issued an order, directing Respondent-Appellant to submit a brief to the court. See Court Order # 2-16-99-1. The order requested that Appellant “provide to the Hopi Appellate Court a statement explaining why she feels the ‘Findings and Judgement’... was decided incorrectly by the Trial Court.” He ordered that this statement be received within 30 days or the appeal would be subject to dismissal. On March 31, 1999 Appellant issued her statement before an official Notary Public of the State of Arizona and, subsequently, filed her brief with the Hopi Tribal Court on April 5, 1999.
On June 30, 1999, Chief Justice Emory Sekaquaptewa then issued an order, directing Petitioners-Appellees to file a response brief within 30 days. See Order # 6-30-99-1. He prescribed tne steps to be undertaken by Petitioners in the absence of counsel. See id. On July 30, 1999 Appellees filed a motion (hereinafter Motion) with the Court requesting dismissal of the appeal on procedural grounds, and provided responses to Appellant’s claims. In their motion, Appellees set forth three grounds for dismissal: (1) Respondent’s failure to file Notice of Appeal in a timely manner, (2) Respondent’s failure to file her brief in a timely manner, and (3) Respondent’s failure to post bond or request a waiver when filing her Notice. The court denied the first and third allegations but requested that Appellant provide the court with an explanation of her late filing at oral arguments. See Order # 10-1-99-1.
Oral arguments were then held at the Hopi Appellate Court on November 10, 1999 before Chief Justice Sekaquaptewa and Judge Abbey. Appellant was asked to explain the delay in filing her brief and Appellees were given an opportunity to respond. The court now issues its decision.

ISSUES PRESENTED ON APPEAL

Threshold Issue:

I. May the appellate court exercise jurisdiction over an appeal where the brief has been filed late?

Assuming the court does have jurisdiction, the following issues are raised:

II. May the trial court hold a fact-finding hearing before ascertaining the applicable substantive law?
III. Did the trial court employ the proper procedures for finding the village custom?

SYNOPSIS

The instant case attempts to resolve a land dispute between family members in the village of Hotevilla. Appellees requested that this court dismiss the pending appeal because Appellant did not file her brief within 30 days of filing notice. However, this court has substantial discretion *323 to accept late briefs under the terms of Rule 37(i). Therefore, we choose to deny Appellees’ motion and exercise jurisdiction over the appeal.
The trial court properly sought to incorporate customary law into its decision-making process by holding a hearing on village custom. Although the trial court performed wonderfully in the absence of guidelines for conducting such a hearing, there are two reasons that make this court unable to uphold the trial court’s decision. First, and foremost, the court held the fact-finding hearing before conducting the hearing at the village to ascertain village practice. This unfortunately may result in unfairness to one or both parties since, without knowing the legal standard, the parties cannot put forth evidence to adequately support their claims. Furthermore, the trial court did not apply procedures appropriate to a hearing to find village customary law. The trial court should have allowed the village an opportunity to propose witnesses for the hearing on village custom, and should have allowed the parties an opportunity to introduce further questions about village custom after the initial testimony.
Therefore, it is the judgement of this court that the case be remanded back to the trial court for two separate procedures: first, to hold a new hearing to ascertain village practice with respect to resolution of disputes about inheritance of farm land and, second, to hold a new trial where parties may present evidence after the establishment of the legal standard. The court acknowledges that this remand will delay a result for both the parties. Thus the tribal court may not be the best forum available for dispute resolution of this nature. The parties are free to seek a settlement by seeking an arbitrator to whom the parties are willing to submit their- situation. If they agree to be bound by such a decision, they can then seek certification of that decision from the trial court.

DISCUSSION

I. The Court Finds There are Reasons to Exercise its Discretion to Accept a Late Brief and Therefore, Denies Appellees’ Motion.
After- reviewing Appellant’s statements at oral arguments, it is this court’s judgement that dismissal of the appeal would be inappropriate. The explicit language of Rule 37 gives this court discretion in deciding whether to hear an appeal when a brief has not been filed within 30 days of the Notice. See HIRCCP Rule 37(i) (“... or within such longer time as the appellate court shall allow ... ”). Case law-also supports such discretion since the court will consider equitable factors even in the case of late Notices, where the language of the Rule grants less leeway. See Coin II, at 5 (“Hopi law clearly grants appellate court discretion to exercise jurisdiction over late appeals.”). We choose to exercise this discretion and deny the motion to dismiss, thus giving us jurisdiction over the appeal.
II. The Trial Court Decision Cannot be Upheld because it Contains Procedural Errors that Affected the Outcome.
It was necessary for the trial court to inquire into and apply village customary law and practice in the instant case because of the unique history of the Village of Hotevilla. Hotevilla came to be as a result of the split at Old Oraibi in 1906. The establishment of Hotevilla and other communities on Third Mesa, affected the traditional “clan lands” system in operation at Old Oraibi because the split did not necessarily fall along clan lines. Mischa Titiev, Old Orabl A study of the Hopi *324 Indians of Third Mesa (1944): 88-89. Under the clan lands system, inheritance of land was traditionally matrilineal, but after the split at Oraibi, inheritance could sometimes be patriline. See Peter M. Whiteley, Rethinking Hopi Ethnography (1998): 62. Furthermore, with clan lands the fields were always the woman’s but with the establishment of these new villages, men came to have different rights in land. See id. at 62, 65. Because traditional systems of clan lands probably do not govern this dispute, it was necessary for the court to apply Village custorrt.
The Appellate Court of the Hopi Tribe has subject matter jurisdiction to hear appeals from final judgements and orders of the Hopi Tribal Court. See Ordinance 21, § 1.2.5. In an exercise of this jurisdiction, we have reviewed the trial court record and conclude that the trial court’s decision cannot be upheld due to procedural errors.
A. Became the Trial Court held a Fact-Finding Trial before the Flearing on Village Custom, the Parties Did not Know the Applicable Law and therefore Were Unable to Present Substantial Evidence to Support their Claim.
In the absence of prior case or statutory law to inform the parties of the legal standard, the court is required to hold a hearing to find the law before it holds a trial-type hearing where evidence is presented. Because this was not done in this case, the facts presented at the trial in April 1995 cannot serve as evidence to support a finding on behalf of either party.
The parties presented evidence supporting their claims of right to the land in question at a trial, before the trial judge on June 29, 1995. However, a hearing to determine the customary law pertaining to the parties’ rights was not held until nearly two years later, in March 1997. See (F.J., at 1). This was a procedural error on the part of the trial court because, without an established legal principal, parties are unable to construct coherent arguments or select the evidence that will support their case since they are forced to speculate as to what the law is. Forcing this speculation is not in the interest of the tribal courts or the parties. Consequently, a new fact-finding healing is required.
B. The Procedures Used at the Hearing Did Not Provide the Proper Forum for Ascertaining Village Custom.
The trial court properly held a healing at the village level, and the manner in which it conducted the hearing should be commended. The non-adversarial nature facilitated testimony from witnesses and emphasized the purpose of finding the law, not facts. However, because the village was not involved in the selection of witnesses and the parties were not permitted to submit additional questions following the initial testimony, the hearing at the village did not provide a sufficient forum for ascertaining village custom.
Article VII of the Hopi Constitution states that “[assignment of use of farming lands . .. within the established village holdings of ... Hotevilla ... shall be made by each village according to established custom.” Hopi Constitution, Article VII § 1. Pursuant to Article VII, the trial court properly held a hearing to ascertain the village custom regarding rights to farming land acquired by use and inheritance. However, because the Village of Hotevilla waived its jurisdiction, the Tribal Court should have given the Village an opportunity to propose witnesses for the hearing.
The non-adversarial nature of the hearing was also proper since many elders *325 might be fearful of undergoing cross-examination. An adversarial atmosphere would not foster village participation in these hearings. However, the parties should have been afforded an opportunity to request further questions after the initial testimony in order to ensure there are not substantial gaps in the law being found. These procedural errors necessitate a new hearing to find the law.
III. The Case is Remanded back to the Trial Court for New Findings of Law and Fact.
In light of the procedural and substantive errors, this case should be remanded back to the trial court for a new hearing on village custom and a new opportunity to present evidence at a fact-finding trial.
A. The Trial Court Shall Give Both Parties Time to Find Counsel, but then Proceed Regardless of Whether They Are Able to Hire Counsel.
At oral argument, both parties expressed their desire to obtain counsel to represent them on appeal and the difficulties they have faced in doing so. This court recognizes that representation would enable the parties to frame arguments in a legal manner that would allow for better review if the trial court’s remanded decision were to be appealed. The trial court, therefore, should not schedule the rehearing for at least two months so that the parties can obtain representation.
However, the parties may be unable to employ counsel. Therefore, we must advise the parties that even if they are unable to obtain counsel within this time, the trial court may proceed in order to avoid further delay. Lack of representation by counsel should not stand as an obstacle to fair and efficient proceedings. This court often deals with parties not represented by counsel and can do so fairly in this case.[1]
B. This Court will Pronounce Procedures for the Trial Court to Employ when Conducting Hearings to Find the Law of the Village.
(1) Either Party or the Judge, Sua Sponte, May Request a Hearing Where Custom is Relevant and not “Proven”.
The rule remains that a party wanting to use village custom as a legal standard must “give notice to the other party and the court through pleadings or other written notice”. Hopi Indian Credit Ass’n v. Thomas (HICA), AP-001-84 (1996), at 5-6. HICA required that parties “prove” the existence of the custom and state its relevance to the issue before the court by referring to precedent, treatises that are accepted by the community, judicial notice, or affidavits of appropriate persons. Id., at 6. However, “proving” custom presents difficulty where there is great diversity among the practices of each village and there is no precedent in the tribal court. Consequently, judicial notice will not generally be available. See HICA, at 6 (“a court may dispense with proof of the existence of a Hopi custom, tradition or culture if it finds ... [it] to be generally known and accepted within the Hopi Tribe”); See also (Amend. Petition) and (Answer) (presenting different claims about Hotevilla custom). In these instances, a hearing is the proper way to find the law.
(2) Notice shall be given to the parties and the Village to allow participation in the selection of witnesses.
The first step in the special hearing process is Notice. The Court should no *326 tice the village and the parties as to the hearing and its purpose, offer guidance as to the kinds of witnesses it seeks, and explain in detail the narrow purpose of a fact-finding hearing to find customary law. Depending on the specific law sought, the judge should try to provide guidance to the Village and the parties for choosing their witnesses. The parties and the Village should then submit a list of potential witnesses along with explanations of the reason for their inclusion on the list, and the type of testimony they can offer. Although the trial judge should give deference to the village’s selection of witnesses, the judge should exercise discretion in approving the final list.
(3) Questions Should be propose prior to the Hearing. However, once the Initial testimony has been heard, there Will be Additional Questions Necessary for Clarification.
Once a witness list has been assembled, the judge should present an initial list of proposed questions to the parties and permit them to offer suggestions. The judge should be responsible for framing this list because this will ensure that questions do not seek to establish matters, but instead seek to discern general principles of village practice.
Answers given in the initial testimony, however, will invariably raise new questions. Therefore, in future hearings the parties should be afforded another opportunity to provide additional questions in response to testimony. The judge can then immediately return and ask these questions of the witnesses. Such a procedure will help eliminate potential gaps in the law.
IV. The Parties May Choose to Settle Out of Court and the Tribal Court would Encourages Such a Resolution.
Although these parties have brought this dispute before the court, we acknowledge that there are alternatives for these parties to resolve this complex dispute. Clearly, the tribal courts must resolve these disputes when brought them, but the intersection of law, Hopi tribal court procedure, village authority, and tradition is very complicated.
Settlement between the parties may expedite resolution of this matter. First, a mediator can facilitate compromise but the court can only issue the remedies requested by the parties. Second, mediation may result in a quicker decision since a settlement need only be certified, and hearings and appeals may not repeat over and over as they may in this case. Both of these considerations would benefit the parties in light of the frustrations expressed by Appellant and Appellees as to the lengthy decision-making in this dispute.[2]

CONCLUSION

This court has found that the instant case is one where it is appropriate for it to exercise discretion to accept Appellant’s brief late in accord with the discretion permitted under Rule 37. Thus, this court will deny Appellees’ motion to dismiss and review the merits of the appeal under the jurisdiction provided by Ordinance 21.
After a review of the trial court record and the briefs filed by both parties, it is *327 this court’s judgement that there were procedural errors at the trial court level in conducting the hearing to find the law and the order of the law and fact hearings. These errors require that the trial court to go back and conduct a new hearing to find the law and a new fact-finding hearing. At the hearing, the court should permit the village to be involved in the selection of witnesses and allow for additional questions from the parties after witness testimony. Once this hearing has been completed, the court may hold a new trial at which the parties present evidence as it supports their claims of right to the land in question, pursuant to the village custom discovered at the hearing.

. The court may look to State and Federal law on pro per/pro se parties when issues arise that Hopi law docs not address the matter sufficiently. See H-12-76.

. Today this court also decided the case of Sanchez v. Garcia, where we held that a decision of a clan relative to which both parties agreed to be bound was restricted the court’s ability to reconsider the dispute. It also found that the trial court may certify the decision with respect to the parties involved in the mediation.