OPINION AND OlWKlt

A. STATEMENT OF FACTS[1] AND PROCEDURE
In a written will, decedent Neomi Ko-maquaptewa left a cinder block house and other property to her daughter and two granddaughters. The cinder block house was built by decedent’s husband Joe Ko-maquaptewa. Petition for Order to Probate Estate and Appointment of Executor and/or Personal Representative at 4 (Exhibit A). In proceedings below, the court found that the decedent’s property was located, heirs and interested parties lived, and heirs practiced their customs and beliefs according to the customs and traditions of Bacavi Village. 8/29/00 Order Dismissing and Transfer to Original Jurisdiction (“ODTOJ”) at 1. The court held that the Hopi Constitution recognized that Bacavi had original jurisdiction to probate Neomi Komaquaptewa’s will because she is a member of Bacavi. Id, at 1.
By a letter dated July 12, 2000 Bacavi waived jurisdiction of this matter. However, the court returned the matter back to Bacavi for resolution. ODTOJ at. 2-d. Bacavi again declined jurisdiction. May 9, 2001 Bacavi Letter at 1. Therefore the court held a hearing where witnesses testified and evidence was admitted and the court found decedent’s written will valid and ordered it probated pursuant to 25 CFR Chapter 1, Section 1.1.700 et seq. See 8/2/01 Order. The court also appointed Dodson Talashoma (decedent’s nephew) the executor/personal representative of the decedent’s estate. Order Declaring the Will Valid (“ODWV”) at 1-2.
After the hearing, the court received a letter dated August 6, 2001 from DeAlva Schneck. Ms. Schneck identified herself as a Hotevilla member and Joe Komaquap-tewa’s sister (decedent’s sister-in-law). She requested a copy of the July 27, 2001 hearing transcript stating that there was a long-standing dispute over her property and asking the court if her property was involved in the hearing. SLRCH at 1. Ms. Schneck alleged that in 1993 her brother orally gave her the cinder block house which is located in Hotevilla and that she had occupied the house for approximately 8 years. Motion to Set Aside Judgment (“MSAJ”) at 1 (transcript of oral will attached at Exhibit A).
Ms. Schneck filed a petition to set aside the court’s Order Declaring the Will Valid. September 10, 2001 Petition, MSAJ at 2. The Petition alleged that: 1) the will was not valid; 2) the proper and interested parties had not been notified or heard; 3) the cinder block house which she had been living in and which was given to Neomi Komaquaptewa’s daughter and granddaughters was located in Hotevilla; 4) the cinder block house was given to her by her brother, Joe Komaquaptewa in a preceding oral will, and 5) since the cinderblock house in which she was interested was located in Hotevilla, Hotevilla was an interested party and Hotevilla had not been provided notice[2]. Id. at 1-2. Ms. Shcneck requested that the court set aside its order and that jurisdiction be transferred to Hotevilla. Id., at 2.
In Dodson Talashoma’s response he stated that Petitioner Schneck lacked standing to dispute the will since she is not *435 a legal heir to the deceased and that the requirement for notice to the villages is based on the membership of the parties and not where the decedent’s property is located. 9/19/01 Objection to Motion to Set Aside Judgment as Untimely and Mer-itless and Lacking Standing at 1-2. The lower court agreed stating that Petitioner Schneck tailed to allege that she was a member of the village in which the house she was claiming was located and that she did not claim to be a legal heir of the decedent, nor one of the heirs in decedent’s will. See 10/4/01 Order Refusing to Set Aside Judgment (“ORSAJ”). The court also noted the right of the testator to dispose of property bequeathed by a will are ordinarily left for determination in a probate proceeding. Id. at 2. Consequently, the court found that the petitioner lacked standing to contest the probate of the will, that notice to Hotevilla was not required and that all procedural requirements to probate the will had been met. Id. at 2.
In Petitioner’s Response, Request for Hearing (“ROMSAJRH”) dated October 6, 2001, she stated that Respondent Talasho-ma ignored the provisions of the Hopi Constitution that reserves inheritance matters to the individual Hopi villages. ROM-SAJRH at 1-2. She also stated that the court and Bacavi had no jurisdiction to determine the inheritance of property located in Hotevilla. Id. at 3. She argued that she occupies the cinder block house in question, and thus should have been notified of proceedings that directly affected her possession and use of the cinder block house. Id. at 2-3. She also argued that there was no authority for Bacavi to waive its jurisdiction since Bacavi has no village constitution granting it the authority to exercise the powers reserved to the individual villages, vesting authority in the Board of Directors or permitting the Board of Directors to waive the village power to regulate inheritance, Id, at 4.
In Respondent’s Objection to Motion for Reconsideration (“OMR”), he states that the Hopi Constitution recognizes that each village has jurisdiction to determine its’ member’s inheritance matters and that the Constitution dot's not grant jurisdiction to the village by property location. OMR at 1. He argued that decedent, Neomi Koma-quaptewa, is a member of Bacavi and not Hotevilla. Id, Therefore, since Bacavi twice waived jurisdiction, it has received sufficient notice. Id. at 2.
The court denied Petitioner’s request stating that its order only determined the testamentary character of the decedent’s will and did not determine the decedent’s right to dispose of property bequeathed in the will 10/18/2001 Order Denying Request at 1. The court stated that proper notice to all affected parties was provided prior to the-underlying proceeding, including Bacavi, decedent’s Village. Id. at 1. The court stated that Ms. Schneck, a member of Hotevilla, had no standing to challenge the right of Bacavi to waive jurisdiction as to probating the estate of its decedent village member. Id. However, the court concluded that Petitioner could challenge, in an appropriate forum, the decedent’s ownership of property that she sought to bequeath. Id, at 2. Consequently, Petitioner Schneck Appealed the court’s order.
B. ISSUES ON APPEAL
Petitioner Schneck’s [hereinafter “Appellant”] Brief on Appeal (“ABA”) raises four issues: 1) that she has standing to challenge the trial court’s probate of decedent’s will; 2) that she should have received notice of the probate action since she has a possessory interest in the cinder block house; 3) that according to the Hopi Constitution, Bacavi, acting through its *436 Board of Directors, has no authority to waive jurisdiction because Bacavi is not organized as a traditional Hopi village and possesses no village constitution as required by the Hopi Constitution; and 4) Ordinance 21 does not vest the Hopi Tribal Court with subject matter jurisdiction to decide probate matters. Appellant requests the following relief: 1) recognition that Appellant has standing to participate in the probate procedure; 2) recognition that the appellant should have received notice of the proceedings below; and 3) a dismissal of the probate proceedings based on the court’s lack of subject matter jurisdiction. Id. at 14.
In response, Appellee/Talashoma argues that Appellant lacks standing to challenge the trial court proceeding. Response to Appellant’s Brief, at 1. Appellee also argues that the Hopi Tribal Court does not lack jurisdiction over inheritance of real property located in Bacavi because Bacavi twice waived its jurisdiction to determine this matter. Id. at 2. Appellee also argued that disputing the right of a governing body to make the decision to decline jurisdiction is an issue for the members of Bacavi. Id. He also stated that if appellant wanted to claim an interest in the estate of the decedent, the process for this is set out in 25 C.F.R. 11.707. Id. at 3.
The Appellate Court ordered briefs and oral arguments on the following legal questions: (1) The Hopi Constitution says that the Villages have the power to decide probate matters. When the Village decides that it does not want to exercise this power, the Appellate Court wants to know whether the parties believe that the Hopi Constitution gives the tribal court the power to decide who will receive the property according to a valid will; and (2) Whether the Hopi tribal court may validate, recognize and probate wills in the absence of a village or tribal statute authorizing and defining the process for recognizing such wills. Since this matter had legal and procedural implications for all Hopi Villages, the Appellate Court invited each Hopi Village to submit Amicus brief's.[3]
C. ANALYSIS
I. & II. Whether Appellant has Standing to Challenge the Proceedings Below and to Receive Notice of the Previous Proceeding
The issues of standing and notice are intertwined. Therefore, both issues will be addressed together.
A. Nature of the Proceeding Below
This court must first determine the nature of the proceeding below that Appellant seeks to Appeal. In this case Appellant filed her Appeal after the trial court’s August 2, 2001 Order recognizing the existence of a will by the decedent, appointing Dodson Talashoma as Executor/Personal Representative of decedent’s estate and ordering all parries to cooperate in the inventory of decedents property. No probate hearing date was set and the trial court did not determine any parties’ legal rights to take under the will. Therefore, to date, no probate action of decedent’s estate has occurred.
B. Whether Appellant Has Standing to Challenge the Court’s Order that the Will is Valid and to Receive Notice of the Proceedings Below
Given that the trial court only determined the existence of a valid will and no probate action occurred, Appellant’s claimed right to take under decedent’s will is premature and must be brought during the probate hearing where a party’s right to contest property distribution generally occurs. Therefore, for purposes of this Appeal, that claim is premature.
*437 However, this Court, must assume that Appellant’s appeal of the trial court’s August 2nd Order seeks to invalidate decedent’s will in the first instance. Therefore, this Court must decide whether she has standing to do so. In the absence of Hopi probate code this Court refers to Arizona law to illustrate why Appellant does not have standing to challenge the validity of decedent’s will.
Under Arizona law, Appellant’s ability to challenge Neomi Komaquaptewa’s will would be the same with or without a written will. Decedent Komaquaptewa would be considered heir to the property of her spouse at the time of his death. Therefore, when decedent’s husband die d, decedent acquired all property of their joint estate. The estate then becomes decedent’s to distribute. Appellant, in turn, would not be considered decedent Koma-quaptewa’s heir. She is not within the Arizona intestate scheme.[4]
Given that Appellant falls outside of the intestate scheme, nor is she named in decedent’s will, Arizona law (a useful reference in the absence of a Hopi Probate Code) does not require that she receive notice of the below proceedings.[5] Consequently, Appellant has no standing to challenge the Order validating the will and appointing Appellee as Executor to decedent’s estate. Therefore, neither the Court nor the Executor erred in not providing Notice to Appellant of the proceeding below.
C. Appellant’s Standing to Quiet Title Property in Decedent’s Will and to Receive Notice of the Impending Probate of Decedent’s Estate
Although Appellant lacks standing to challenge the validity of decedent’s will, she has standing to assert a claim to property in which she claims a right of possession or has ownership interest,. Appellant’s claim, though not clearly stated in *438 her pleadings, should have been characterized by the court as . a Motion to quiet tide the cinder block house.[6]
Appellant clearly brought her claim to challenge ownership over the cinder block house, not to claim an inheritance right under decedent Neomi Komaquapte-wa’s will. She contests the ownership of specific property and whether the decedent had an ownership right to dispose of property in which Appellant had a posses-sory or ownership interest Therefore, she is an interested party. A “person interested” is one who “will be directly affected in a pecuniary sense by a settlement of the estate under the will and this means one who is affected detrimentally by being deprived of a right he would have otherwise had in the absence of a will.” In re Biehn’s Estate, 41 Ariz. 403, 409, 18 P.2d 1112 (Ariz.1933). Consequently, as an interested party, Appellant has standing to seek quiet title to the cinderbloek house and is entitled to receive Notice of any probate hearing to divide decedent’s estate.
States like Arizona provide that a quiet tide action may be consolidated with a probate action, and that a court may have concurrent jurisdiction over both actions to provide for a just and efficient resolution to the matter,[7] Similarly, Rule 1(b) of the Hopi Indian Rules of Civil and Criminal Procedure permits a liberal construction of the rules to secure a just, speedy, and inexpensive determination of every action. Additionally, Rule 11 of the Hopi Indian Rules of Civil and Criminal Procedure states that “[a] person may intervene and be treated in all respects as a party to an action in eases in which property in which he has an interest may be affected or a question of law or fact common to a claim of his may be litigated.” Together, Rule 1(b) and Rule 11 provide a mechanism with which the court could broadly construe Appellant’s claim and permit her to intervene during the probate to challenge the title to the cinder block house.
We therefore order that the court consolidate Appellant’s quiet title claim with any probate action. Moreover, Appellant shall be permitted to present evidence of her claim that: 1) the cinder block house is located in Hotevilla and; 2) that Hotevilla *439 has an interest in the dispute over the cinder block property. Developing these facts will assist in clearing title to the cinder block property and the character of the land beneath it and wall prevent future claims to the property for all affected parties and Villages. Appellant’s quiet tide action contains common facts and implicates traditional laws and customs common to the probate. Neither the probate of decedent’s will, nor the ownership or pos-sessory claim to property affected by her will can be settled without addressing these claims.
Having found that Appellant has standing to intervene as a party, in future proceedings relative to the cinder block property, this Court finds Appellant entitled to Notice of any future proceeding to probate decedent’s estate. Appellee, in his role as personal representative and executor of decedent’s estate, is required to provide such notice to all interested parties to the entire estate. As the personal representative of decedent’s estate, Appellee is “under a duty to settle and distribute the estate of the decedent in accordance with the terms of any probated and effective will ... and as expeditiously and efficiently as is consistent with the best interests of the estate. He shall use the authority conferred upon him ... the terms of the will, if any, and any order in proceedings to which he is party for the best interest of successors to the estate.” See A.R.S. § 14-3703 A. Emphasis added. As ordered by the trial court, Appellee must act diligently to inventory decedent’s estate, identify and notice further interested parties.
III. Whether Bacavi Village Board of Directors have the Authority to Waive Jurisdiction to Determine Property Disputes on Behalf of the Village
Appellant argues that the Bacavi Village Board of Directors did not have authority to wfaive Village jurisdiction to hear this property dispute. Appellant states that because “[t]he Village of Bacavi is not organized as a traditional Hopi Village; nor ... is the Village organized pursuant to a Village Constitution, [i]t must act with the immediate consent of the Village members on any issues under the general direction of it Governor.” Appellant’s Brief at 11. Therefore, if the Village members decline to act, on any issue, the Village has exercised no governmental authority. Id. Emphasis added. Appellant’s argument is without merit.
The individual Hopi Villages pi*e-existed the Hopi Tribal Constitution. Article III, Section 1 of the Hopi Constitution states “[t]he Hopi Tribe is a union of self-governing villages.” Section 3 states “[e]ach village shall decide for itself how it shall be organized.” Emphasis added. Section 4 states “fajny village which does not possess the traditional Hopi self-government, or which washes to make a change in that government or add something to it, way adopt a Village Constitution.” Emphasis added. Read together, these Sections presume the existence of established Hopi Village governments that precede the Hopi Tribal Constitution. This Court does not read the Hopi Constitution as compelling previously existing Villages to organize or to enact a Constitution before it is recognize as a legitimate village government with powers over its own members.
In a prior opinion, we stated:
Article 111, Section 2 of the Hopi Constitution reserves four subject matter-areas to the Hopi villages. Section 2(c) reserves to the villages the power to “regulate the inheritance of property of the members of the villages.” The language of this subsection gives rise to an interpretive issue because it provides *440 that inheritance disputes are reserved to “the villages,” but speaks no further on the matter. It does not specify what governmental entity or entities within the village possess the constitutional power to resolve disputes falling [ujnder Section 2(c).
The answer to this question is not obvious, because the respective villages at Hopi vary significantly in terms of their governmental structures: some are “traditional” villages, where the preeminent village authority is the Kikmongwi; some are “modern” villages with a formal constitution allocating governmental powers within the village; and most are “hybrid” villages, where the division of power between traditional leaders and popularly elected village board members remains somewhat uncertain. In a hybrid village legal authority is not concentrated in any one governmental entity. Because Hotevilla is a hybrid village, it cannot be assumed that the language of section 2(c) vests the power to resolve inheritance disputes in the Hotevilla Village Board exclusively. Outside of the Hotevilla Village Board, other Hotevilla village members possess legal authority within the village. The basis of this legal authority is tradition and custom. Traditional legal authorities, as well as the Village Board, may possess the power to resolve inheritance disputes and distribute property pursuant to the Hopi Constitution. Nutongla-Sanchez v. Garcia, -98AP000014, 1 Am. Tribal Law 523, -_—, 1999 WL 34977088, *2-3 (1999).
Therefore, this court will view as authoritative a response from a Village governing entity, whether traditional or modem, unless someone within that Village challenges this governing power. Appellant is not a member of Bacavi.
Here, Bacavi has evolved to include an established Board of Directors to address matters that affect the Village and its members. This Board of Directors has continuously engaged in decision making processes in Village matters. This Court will not second guess how Bacavi has evolved or how it carnes out its Village decision making processes. Therefore, this Court recognizes the authority of Bacavi, through its’ Board of Directors, to waive jurisdiction to hear this property dispute.
A. Which Village has Jurisdiction to Hear a Probate Matter Affecting More than One Village
In the probate, we recommended that the trial court determine whether village membership or property location is a more important consideration. The trial judge should carefully consider whether it would infringe on the rights of a village to have another village distributing property within its boundaries. In this case it might be helpful to look toward United State probate law, where property may have to be probated in more than one state if the property is located in more than one state (the analogue would be to have the property probated in more than one Ullage if a house was located in more than one village).
Having found that the Bacavi Board of Director’s has authority to waive the Villages jurisdiction to determine this property dispute, this court must determine, the effect of that declination to a probate and quiet tide proceeding. The Hopi Constitution, in reserving certain matters to the villages, does not deny a village the authority to decline jurisdiction and request the court to decide the matter. For the court to deny the villages this authority deprives them of some of their power, much as denying a person the right to make a contract or making a contract void *441 able deprives that person of some of his innate capacity. Such a result seems at odds with a Constitution that sees the Hopi Tribe as composed of a group of self-governing villages. Thus, as here, where Baeavi twice declined jurisdiction and directed this matter to the court there is no question that Baeavi sought the court’s intervention.
However, Hotevilla, in which the cinder block house is allegedly located, must be given notice of the probate and quite tide action and given the opportunity to decline jurisdiction with respect to the cinder block house. Hotevilla may or may not exert an interest in the cinder block property. Nonetheless, Notice to Hotevil-la that competing claims to property allegedly located within its Village and affecting its member(s) must occur before the trial court can probate decedent’s estate.
Furthermore, although Baeavi declined jurisdiction, it does not become uninterested in the outcome of its’ tribal members’ inheritance litigation. Here, the village(s) member and property interests may ultimately affect Bacavi’s traditions and customs. For these reasons, if Hotev-illa declines jurisdiction, the court should join Baeavi and Hotevilla as indispensable parties under Rule 10 of the Hopi Indian Rules of Civil and Criminal Procedure.[8] In so doing, the parties receive the benefit of Hotevilla and Baeavi to provide pertinent background and history as to the nature of the cinder block house and character of the land on which it is built Furthermore, joining all parties relevant to the proceeding will help avoid future legal challenges to the cinder block property.[9]
IV. The Tribal Court’s Jurisdiction over Probate and Inheritance Claims
 Haring determined that Appellant has standing to intervene as an interested party to quiet tide her alleged property in the probate matter, we must now determine whether the Tribal court has the jurisdiction to consider probate and inheritance matters in the absence of tribal law. We find that the tribal court has such jurisdiction.
It is well settled that probate matters are left to the individual Villages pursuant to the Hopi Constitution.[10] Article III, *442 Section 2 of the Constitution and By-Laws of the Hopi Tribe reserves to the separate villages jurisdiction to regulate village members’ inheritance of property. The Hopi Constitution, tribal ordinances and resolutions are devoid of procedure when a village declines or refuses to exert this authority. Therefore, this Court must examine the sources of power enabling the Tribal Court to address inheritance matters when a village refuses to do so.
The Tribal Court has jurisdiction over “[t]he ownership, use or possession of any real or personal property within the Reservation.” Hopi Ordinance 21, § 1.7.1(d)(3). Moreover, subsection (a) of Tribal Ordinance 21 states that [T]he Hopi Tribal Court shall have jurisdiction over all civil actions where there are sufficient contacts with the Hopi Indian Reservation upon which to base the exercise of jurisdiction, consistent with the constitution and laws of the Hopi Tribe and the United States. This section authorizes the broadest exercise of jurisdiction consistent with these limitations. Hopi Ordinance 21, § 1.7.1(a). This section of Ordinance 21 expresses the Tribal Council’s intent to authorize the Hopi Tribal Court to exercise the broadest jurisdiction consistent with the constitution and laws of the Hopi Tribe and the United States. Village of Mishongnovi v. Humevestewa, 11, No. 96AP000008 (Hopi 11/20/1998). Read in its entirety, Ordinance 21 grants the Tribal Court broad jurisdiction over property located on the Hopi reservation, its use and ownership.
If the Tribal Court did not exercise jurisdiction after a village declined its right to decide a member’s probate claim, village members would be left without a tribal forum in which to assert their property rights.[11] Hopi tribal members would be unable to raise factual and legal matters affecting their cultural and legal interests in property, leading to a violation of substantial lights and leaving aggrieved parties to contest probate matters in non-tribal judicial forums.[12] Moreover, Hopi tribal and village customs and traditions would not receive the same consideration in a non-tribal forum and the results could be devastating to Hopi parties, the Tribe and the Villages. Therefore, this Court finds as a matter of law' and public policy that the tribal court has jurisdiction to decide inheritance matters w'hen a village *443 declines to or avoids its responsibility to do so.
A. Choice of Law Once a Village Declines Jurisdiction
Having determined that the trial court has subject matter jurisdiction once a village affirmatively waives its jurisdiction to decide probate matters affecting its members[13] the trial court stands in the place of the village to probate the estate. The trial court must therefore apply the traditions and customs of the affected village(s) in the absence of village probate laws before resorting to foreign (federal or state), law.[14]
In the order filed August 2, 2001, the trial court stated that 25 C.F.R. 1[ J1.700 et seq. would be used to probate the will. However, we find the court erred, since 25 C.F.R. 11.700 et seq. deals with the probate of wills by the Court of Indian Offenses.[15] The Hopi tribe is no longer subject to the Courts of Indian Offenses or its regulations. Ordinance 21, Section 1.1.2. Therefore, while the C.F.R. offers guidance, its application to Hopi inheritance matters is not required.
In Hopi Tribe v. Mahkewa, we stated that where Hopi written laws or rales are not on point, the Court will first consider Hopi custom and tradition. Hopi Tribe v. Mahkewa, AP000292, at pages 4-5 (Hopi Appellate Court, 1995). If no custom or tradition are on point, the Court will turn to foreign law, and the Court will first consider either federal or Arizona state law, or both. Neither Hopi Tribal Council nor any of the villages have adopted a Probate Code to regulate inheritance wills. For this reason, until a Probate Code is adopted by the Council or the respective Villages, the trial court must probate wills first according to the custom and tradition of the implicated villages. According to custom and tradition, the Village of a decedent may or may not recognize wills. Therefore, the trial court must determine what law the affected village(s) would have to apply.
Prior to the probate action, the court should seek guidance on the affected Villages choice of lawr, custom and tradition. The process for discovering custom and tradition is set forth in Smith v. James, *444 98AP000011, 2 Am. Tribal Law 319, 324-27, 1999 WL 34977087) at *5-7 (1999)[16].
While Bacavi has waived jurisdiction to decide the probate matter and Hotevilla may do the same, they nonetheless have critical knowledge and background to the probate and the quiet tide claim. The process outlined above will provide critical information to enable the court to settle these disputes.
Moreover, several important issues emerged from the various oral arguments dated August 29, 2000 and July 27, 2001. Mr. Talashoma argued that: there was a valid will; Hopi tribal courts should/do recognize wills; and the will states that he is the administrator and takes under the will. In terms of custom law arguments, he argued that: Jolene was adopted by the decedent to care for her but she did not care for her and Mr. Talashoma did; and that Jolene and Amy were acting irresponsibly/immorally, so they had no moral right to inherit the property. By contrast, Ms. Jolene Komaquaptewa relied more heavily on arguments of Hopi custom law. Her arguments included the following: the interests of the will are not aligned with custom; men under Hopi law do not take homes (for example, a male has no interest in claiming a Piki house); Mr. Talashoma is not a member of the decedent’s clan; Mr. Talashoma was not adopted in the Hopi way by the decedent; Jolene had ceremonial responsibilities involving the home in which she was living; by virtue of fulfilling those ceremonial responsibilities she deserves the home. These matters are of critical importance to the affected parties, their heirs, the Village and Hopi tradition and custom.
Thus prior to probating decedent’s will, the record must be fully developed to include evidence of tradition, custom and family relationships relative to these matters. To quiet title the cinder block house and adjoining property, the court must develop a record not only on where the cinder block house is located but on the following: The character of the adjoining property; Who claimed tide to the land at the time the cinder block house was built; Who built the house and for whom the *445 house was built; Whether ceremonial responsibilities are associated with the house, and from which village the devisees under the will are members.
IT IS SO ORDERED.

. The factual summary is derived from the lower court record.

. This was the first mention: that the cinder-block house was alleged to be located in Ho-tevilla and not Bacavi.

. Amicus briefs were submitted by Kykotsmo-vi and Upper Moencopi Villages.

. Any part of the intestate estate not passing to the decedent’s surviving spouse under § 14-2102 or the entire intestate estate if there is no surviving spouse passes in the following order to the following persons who survive the decedent: 1. To the decedent’s descendants by representation. 2. If there is no surviving descendant, to the decedent's parents equally if both survive or to the surviving parent. 3. If there is no surviving descendant or parent, to the descendants of the decedent’s parents or either of them by representation. 4. If there is no surviving descendant, parent or descendant of a parent, but the decedent is survived by one or more grandparents or descendants of grandparents, half of the estate passes to the decedent's paternal grandparents equally if both survive or to the surviving paternal grandparent or the descendants of the decedent’s paternal grandparents or either of them if both are deceased with the descendants taking by representation. The other half passes to the decedent's maternal relatives in the same manner. If there is no surviving grandparent or descendant of a grandparent on either the paternal or the maternal side, the entire estate passes to the decedent’s relatives on the other side in the same manner as the half. A.R.S. 14-2103. (“Descendant” means all of the decedent's descendants of all generations, with the relationship of parent and child at each generation. A.R.S, 14-1201.)

. Notice shall be given to the following persons: the surviving spouse, children and other heirs of the decedent, the devisees and executors named in any will that is being, or has been, probated, or offered for informal or formal probate in the county, or that is known by the petitioner to have been probated, or offered for informal or formal probate in another jurisdiction, and any personal representative of the decedent whose appointment has not been terminated. Notice may be given to other persons. In addition, the petitioner shall give notice by publication one time at least fourteen days before the hearing to all unknown persons and to all known persons whose addresses are unknown who have any interest in the matter being litigated. A.R.S. 14-3403.

. A quiet title action is "[a] proceeding to establish IlierJ title to land by bringing into court an adverse claimant and there compelling him to either establish his claim or be forever after estopped from asserting it.” Black’s Law Diet, 6th Ed.

. A. To the full extent permitted by the constitution, the court, has jurisdiction over all subject matter relating to: 1. Estates of decedents, including construction of wills and determination of heirs and successors of decedents, and estates of protected persons. ... 3. Trusts. B, The court has general jurisdiction to make orders, judgments and decrees and take all other action necessary and proper to administer justice in the matters which come before it including jurisdiction to [hjear and determine related claims by or against fiduciaries, protected persons or incapacitated persons by or against third parties, including claims for malpractice, breach of contract, personal injury, wrongful death, quiet title and breach of fiduciary duty. A.R.S. 14-1302. Emphasis added. See also A.R.S. 14-3105: C. The court has general jurisdiction that it may exercise in a formal proceeding in any other action or proceeding concerning succession or to which an estate, through a personal representative, may be a party, including: 1. Actions to determine title or to quiet title to property alleged to belong to the estate. 2. Actions for personal injury and wrongful death. 3. Actions to quiet title of property that belongs to the estate. 4. Actions against third parties to recover estate assets. 5. Any action or proceeding in which property distributed by a personal representative or its value, is sought to be subjected to rights of creditors or successors of the decedent. See also Gonzalez v. Superior Court, 117 Ariz. 64, 570 P.2d 1077 (1977) (the Superior Court has the power to hear a quiet title claim combined with probating a will).

. Rule 10(c) states: To the greatest extent possible given the limited jurisdiction of the Hopi Indian Tribal Court, all persons or parties interested in a particular action may be joined in the action, but failure to join a party over whom the Court has no jurisdiction will not require a dismissal of the action unless it would be impossible to reach a just result without such party; otherwise, the failure to join a party may be taken into account to assure that justice is done.

. Although a village may decline to resolve a particular dispute, and where the trial court is required to apply village law to resolve the dispute, it is still vital to the appropriate and fair outcome of the case that the village participate in the “custom law finding process" before the trial court. Where a village declines such participation, the tribal court will be compelled to join the village as a party to reach an appropriate result under Hopi law and to be fair to all involved, including parties, village leadership, and other village members whose customary • practices and rights may be implicated. In the future the village itself may want to adopt a written probate code setting out its rules for the passing of property after the death of a village member. Otherwise, and in some cases, additionally, village leadership must be prepared to assist the court with the selection of traditional expert witnesses and questions pursuant to the process set out in Smith v. James, 98AP000011, 2 Am. Tribal Law 319, 324-27, 1999 WL 34977085 at *5-7 (1999).

.Article III, section 2 of the Constitution and By-Laws of the Hopi Tribe provides that: "The following powers which the Tribe now has under existing law ... are reserved to *442 the individual villages: (a) To appoint guardians for orphan children and incompetent members, (b) To adjust family disputes and regulate family relations ot members of the villages, (c) To regulate the inheritance of property of members of the villages, (d) To assign (arming land, subject to the provisions of Article VII." Constitution and By-Laws of the Hopi Tribe Art. Ill, § 2.

. The Upper Village of Moenkopi eloquently-expressed this concern in its amicus brief, stating: If the Hopi Tribal Courts do not have subject matter jurisdiction over probate matters when a village * * * waives its jurisdiction in favor of tribal court resolution, there wrould be a jurisdictional vacuum over numerous important cases. * * * So long as a village refused to decide the matter, the parties could be left without any venue in which to air their claims. Such a result would be extremely undesirable, particularly in the area of probate claims, where the disputes often involve residences, farming areas, and other real property and where the parties involved tend to have significant emotional involvement in the dispute.

. In its oral statement to this Court, Kykot-smovi Village acknowledged that the people and courts are undermined in the absence of tribal or village probate codes or other laws. It acknowledged that such codes would make it easier for the villages to hear and decide probate matters in a fair way, and would facilitate and expedite the trial court's application of the relevant laws and customs in cases in which a village does not wish to exercise its inherent power.

. Here the Village of Bacavi twice waived its jurisdiction and therefore is estopped from any future attempts to reassert its jurisdiction. To permit Bacavi to now reassert jurisdiction over the probate matter would be fundamentally unfair.

. Hopi Tribe v. Mahkewa AP000292 (Hopi Appellate Court, 1995).

. The Court of Indian Offenses and the related regulations have been characterized in the following way: Courts of Indian Offenses [were] established in the late nineteenth century as a part of the Bureau of Indian Affairs’ assimiiationist program for reservations.... The Courts of Indian Offenses, also known as “CFR courts” because they operated under guidelines set forth in the Code of Federal Regulations, have been characterized by critics as "instruments of cultural oppression” because of their use of criminal sanctions to impose dominant cultural norms on tribal peoples. In particular, in an effort to assimilate the Indian people into both the religious and jurisprudential mainstream of American society, important Indian customs and spiritual practices were outlawed and violations were punished by the CFR courts. * * * The Courts of Indian Offenses continued as the instruments of the Bureau of Indian Affairs (“BIA”) control until the I930’s when the failure of assimilation as federal policy was clear. With the passage of the Indian Reorganization Act of 1934 (“IRA”), the federal government, for the first lime, gave its imprimatur to tribes to create and operate their own judicial systems. The emergence of these modern tribal courts occurred hand-in-hand with the introduction of codified law on Indian reservations. Barbara Ann Atwood, Tribal Jurisprudence and the Cultural Meanings of the Family, 79 Neb. L.Rev. 577, 587-89 (2000).

. The Court should notice the village and the parties as to the hearing and its purpose, offer guidance as to the kinds of witnesses it seeks, and explain in detail the narrow purpose of a fact-finding hearing to find customary law. Depending on the specific law sought, the judge should try to provide guidance to the Village and the parties for choosing their witnesses. The parties and the Village should then submit a list of potential witnesses along with explanations of the reason for their inclusion on the list, and the type of testimony they can offer. Although the trial judge should give deference to the village’s selection of witnesses, the judge should exercise discretion in approving the final list. * * * Once a witness list has been assembled, the judge should present an initial list of proposed questions to the parties and permit them to offer suggestions. The judge should be responsible for framing this list because this will ensure that questions do not seek to establish matters, but instead seek to discern general principles of village practice. Answers given in the initial testimony, however, will invariably raise new questions. Therefore, in future hearings the parties should be afforded another opportunity to provide additional questions in response to testimony. The judge can then immediately return and ask these questions of the witnesses. Such a procedure will help eliminate potential gaps in the law. * * * Although these parties have brought this dispute before the court, we acknowledge that there are alternatives for these parties to resolve this complex dispute. Clearly, the tribal courts must resolve these disputes when brought them, but the intersection of law, Hopi tribal court procedure, village authority, and tradition is very complicated. Settlement between the parties may expedite resolution of this matter., * * * Mediation may result in a quicker decision since a settlement need only be certified, and hearings and appeals may not repeat: over and over as they may in this case.